| 54 | 15 |
|----|-----|
| 81 | 380 |

| 54 | 15 |
|----|-----|
| 88 | 255 |

| 54 | 15 |
|----|-----|
| 104 | 441 |

## The People v. John Brown.

*Perjury by an accused person testifying in his own behalf—Certiorari as to plea of guilty—Suspended sentence.*

1. Where an information alleges that the respondent appeared as a wit-
ness "on his own behalf" no other statement that he had been allowed
to testify "at his own request" (How. Stat. § 7544) is necessary.

2. False swearing in one's own defense, if it amounts to perjury, is not
excused by the fact that it may have been made immaterial by other
testimony whereby the witness had already convicted himself.

3. A circuit judge's return to a writ of certiorari issued to ascertain
whether or not a plea of guilty was voluntary is conclusive as to the
fact, of which the judge is required to satisfy himself by private
examination.

4. Where an affidavit for a certiorari to determine whether a plea of guilty was voluntary set forth that the prosecuting attorney had procured it by holding out hopes of leniency, the judge, in making return to the writ, properly attached the prosecuting attorney's affidavit that he had in no way approached the accused.

5. The pardoning power in Michigan belongs to the Governor alone; no judge can exercise it by indefinitely suspending the sentence of a convicted criminal. And the presentation to a judge of any petition for such suspension is a grave impropriety.

6. Judgment on a plea of guilty should be set aside if the plea was made in consequence of any intimation from the judge that the sentence would be more severe in case of conviction upon a trial. And it should be set aside, even if the intimation was not by way of threat, but the punishment was severe. It need not be, however, if the judge, in answer to importunities, has only shown a disposition to inflict a milder punishment on confession of guilt, and has done so. But no such intimation, however guarded, is proper.

7. A prisoner who lets his plea of guilty stand after a full examination by the judge as to whether it was voluntary, and a frank assurance from him that he must inflict some punishment by way of example, cannot complain that his plea was obtained by raising false hopes of leniency.

Error to Kalamazoo.    (Mills, J.)    April 29.—June 4.

PERJURY.    Respondent brings error.    Conviction affirmed.

*Oscar T. Tuthill* and *Powers & Oxenford* for appellant.

Attorney General *Van Riper* for the People.

COOLEY, C. J.    Respondent, in the month of September, 1883, was arrested on a warrant issued by a justice of the peace of the county of Kalamazoo, which charged him with perjury, said to have been committed as a witness on his own behalf when being tried on a charge of unlawfully keeping open on Sunday a saloon of which he was proprietor.    The justice examined a number of witnesses in support of the charge of perjury, and held the respondent for trial in the circuit court.    An information, based on the charge before the justice, was then filed in the circuit court, in which, after setting out the proceedings before the justice on the charge of unlawfully keeping open the saloon on Sunday, it was

averred that the said respondent "then and there appeared as a witness in his own behalf, under a plea of not guilty," and falsely, corruptly, knowingly, willfully and maliciously gave the following evidence, which was alleged to have been material to the issue, and all of which was false:

"On said Sunday, the said 16th day of September, as aforesaid, the said saloon was not open at all during the afternoon of said day, and no liquor was sold to any persons at any time during the said day, and no persons were in the said saloon during any portion of the said day, except the said John Brown, and his family and employees; and said saloon was not open at any time during the day except during a short time in the morning, while he was working with some hose in front of and in the fore part of the said saloon, and he saw no liquors sold by any of his employees during any portion of said day."

Being called upon to plead to the information December 15, 1883, the respondent pleaded in abatement " that he has not had a preliminary examination, nor waived the having of such examination, as provided by law for the offense charged in said information of perjury, when properly and sufficiently laid and assigned; and that he is not and never has been a fugitive from justice." This plea was replied to by the prosecution, and overruled, and the respondent then pleaded not guilty. Subsequently he withdrew this last plea and pleaded guilty, and on January 5, 1884, he was sentenced to confinement in the State prison for one year and six months.

Respondent, after being sentenced, sued out a writ of error, and he also applied for and obtained a writ of certiorari directed to the circuit judge. The affidavit on which this last writ was obtained, after setting out the filing of the information, and the plea of not guilty thereto, after decision on the plea in abatement, proceeds as follows:

" That thereafter, as well as before, and from the 10th day of December last, he was often approached by said Knappen, the prosecuting attorney, who talked to deponent about his case, advising him to change his plea of not guilty, saying to him, deponent, that he would get a lighter sentence thereby, if any at all, and that if he plead guilty he would use

his influence, and help him all he could with the judge to have the sentence in his, deponent's, case suspended.

"Deponent says that like talks occurred by said prosecuting attorney with him in the village of Kalamazoo at different times and places therein, subsequent to said first day of the term, together with other persons, residents of said village, and interested in behalf of deponent, till he, deponent, was led to believe, against the advice of his counsel in said case, that a plea of guilty to the information as filed against him would secure his liberty under a suspended sentence, which would be the best thing to do rather than stand trial, and that being so impressed and influenced by said prosecuting attorney, and those who claimed to know what the judge was disposed to do in case he changed his plea to guilty, viz., that he would suspend sentence, deponent did so change his plea of not guilty to that of guilty, on the 2d day of January, 1884. Whereupon he was immediately remanded to jail, and there kept till Saturday, the 5th day of January, inst., when he was brought out before the court for sentence; that just previous thereto, and at no other time, Alfred J. Mills, the circuit judge, had a few moments talk with him in the back room of the court-house, which commenced by the said judge asking deponent why he plead guilty. Whereupon deponent told him he did it because he had been advised and influenced to do it by his friends outside, in the hope of having sentence thereon suspended; that he did not intentionally or knowingly do wrong, and ought not to be imprisoned, and did not expect to be, and that he had been influenced to believe that the court would suspend sentence in his case and give him his liberty thereunder if he plead guilty to the charge, and therefore he had done it, expecting that to be the result, saying also in the same connection that he would rather die in his cell in jail that day than go to State prison for any time, and that he did not expect he would send him to State prison; that there the talk ended, and the judge told him to go out in the court-room, and the single question being put to him by the court, if he had anything to say why sentence should not be pronounced, the said court proceeded to sentence him, deponent, to the State prison at Jackson, at hard labor, for the period of one year and six months from and including said day.

"And deponent says he never plead guilty to the charge against him in said case freely and without undue influence, but, on the contrary, was unduly influenced to do as he did in pleading guilty, with the hope, understanding and prom-

ise that he would not be sentenced to State prison if he did, but that sentence would be suspended; and that, in the single and only interview he had with the judge, he told him the circumstances under which he plead guilty, and the hope of favor and the influence that induced him to so plead.

"And deponent alleges that he is advised and believes that the proceedings by the judge of said court to make the investigation necessary and as required by him respecting the case, the circumstances of the plea of guilty to the charge, and his sentence and judgment, was erroneous, irregular, not in accordance with the statute, and void, and should be set aside and quashed, for the following reasons, to wit: 1st. The said circuit judge did not perform his duty under Act 99 of Laws of 1875, of this State, as required therein, before pronouncing judgment and sentence in said case. 2d. The judge of said circuit court did not properly perform his duty under the statute of this State, viz., Act 99 of Session Laws, 1875, after the investigation made by him as to the plea of guilty in this case, and the circumstances there made known to him under which it was made, and that the sentence and judgment thereafter pronounced are void. 3d. The judge of said circuit court did not become satisfied, from any investigation and interview with deponent before pronouncing sentence and judgment, that his plea of guilty was made freely and without undue influence, and therefore such sentence and judgment are void. 4th. The said judge of said circuit court, in the investigation and interview had by him in the performance of his duty under the statute of this State in this case, viz., Act 99 of Session Laws of 1875, before pronouncing sentence and judgment in this case, was informed and distinctly told that the plea of guilty in this case was by reason of influence, and not freely, without promise or hope of favor, but with the understanding and belief that sentence would be suspended."

The circuit judge made return to the writ of certiorari, the material portions of which are as follows:

"In obedience to the writ of certiorari hereto attached, I, the undersigned, circuit judge, by whom said respondent was sentenced, do hereby certify and return that, as to the matters stated and set forth in the affidavit upon which said certiorari was allowed, with reference to what took place between said respondent and the prosecuting attorney of Kalamazoo county, I have no personal knowledge, but believe the same

to be wholly untrue, and base such belief, in part, upon the affidavit of Frank E. Knappen, hereto annexed and made a part of this return.

"And I further return that on the 10th day of December, 1883, the respondent was arraigned upon an information charging him with perjury, and that he plead thereto not guilty; that thereupon Oscar T. Tuthill, who claimed to be acting as his attorney, asked that such plea be allowed to stand, as entered pro forma, which request was granted. And I further return that, on December 15th, the respondent caused a plea in abatement to be filed to said information; that replication was thereafter filed upon the part of the People, and after hearing counsel for respondent and the prosecuting attorney, upon full consideration, the plea was overruled on December 20, 1883.

"And I further return that, on the 20th of December, I was approached by Oscar T. Tuthill, the attorney for the respondent, who inquired of me whether, in the event that the respondent plead guilty to the charge, I should be willing to suspend sentence; that I at once informed him that I would do nothing of the kind, and that it was not my habit or practice to announce, in criminal cases, what the sentence of the court would be in advance.

"And I further return that thereafter I was approached by one D. B. Merrill, Esq., in behalf of the respondent, and asked by him, in the presence of the prosecuting attorney, if, in the event that the respondent plead guilty, I would be willing to suspend sentence in his case; that I informed him, said Merrill, that I should do nothing of the kind, and that it would be time enough for me to determine what the sentence should be after the respondent was convicted.

"And I further certify that the respondent, upon the overruling of his plea in abatement, was required to plead anew; that, immediately before pleading, I was again approached in his behalf by his attorney, and I again informed him that, in the event that he plead guilty, I should not feel it my duty to suspend sentence; that he then announced to me that the respondent would plead guilty. The respondent, however, plead not guilty. And I further return that his case was then placed upon the call-board for trial in its regular order, and that, in fact, it had been upon call prior to that time.

"And I further return that, on the 1st day of January, I was again approached by the respondent's attorney, and again requested to suspend sentence in his case, provided the respondent plead guilty; that I again plainly stated that I should

feel it my duty to do nothing of the kind, but that, if the respondent should plead guilty, I should view his case as one meriting less punishment than I should feel disposed to impose should he be convicted after a trial by jury.

" And I further return that, on the 2d day of January, the respondent's case was reached in its order upon call for trial, and the clerk ordered to call a jury therein; that then the attorney for the respondent announced that respondent desired to change his plea of not guilty to that of guilty. I inquired of the respondent if that was his desire, and he announced that it was, and the plea of guilty was accordingly entered. I then announced that nothing would be done in the case until after the holidays, and informed counsel that I should be glad to hear, at the time to which court would be adjourned, as to the antecedents of the respondent. And I further certify and return that the respondent was then remanded to jail, and court adjourned until the 5th day of January.

" And I further certify and return that, between the said 2d and 5th days of January, I was again approached by persons claiming to be friends of the respondent, in his behalf, and asked to suspend sentence in his case, and that I again informed such persons that it would not be my duty to do so, but that I would examine into the previous history of the respondent and consider any mitigating circumstances that there might be in his case, and that I was not prepared to announce in advance what his sentence would be; that in the afternoon of the 5th of January I caused the respondent to be brought to a private room adjoining the court-room, for the purpose of satisfying myself as to whether the plea of guilty entered by him was voluntary, and understandingly made.

" And I further return that I did not commence conversation with the respondent by asking him why he had plead guilty, nor did respondent tell me that he did so because he had been advised and influenced to do it by his friends outside, in the hopes of having sentence suspended, nor that he did not voluntarily or knowingly do wrong, and ought not to be punished, and did not expect to be; nor that he had been influenced to believe that the court would suspend sentence in his case, and give him his liberty thereunder, if he plead guilty to the charge; nor that he had plead guilty expecting that to be the result; nor did he say in that connection, or at any other time during the interview, or at all, that he would rather die in his cell in jail that day than go to the

State's prison for any time, nor that he did not expect to be sent to the State's prison. In short, I return that no such interview took place between the respondent and myself as is set forth in his affidavit upon which said writ of certiorari was allowed.

"And I return further that upon respondent's being brought into said private room I told him to sit down, that I was then engaged, and that after a little I wanted to talk with him; that I commenced the conversation substantially as follows:

'Mr. Brown, you have plead guilty to an information charging you with perjury, and I want to find out whether your plea is voluntary or not. Did you plead guilty because you felt that you were guilty of the offense with which you were charged, or did you plead guilty because of any promises or influences brought to bear upon you to do so?'

"That the respondent in reply stated in substance that he plead guilty because he felt that he was guilty, and that he should have done so before had it not been that he was advised by his counsel not to do so; that he had thought the whole matter over, and he felt satisfied that that was the best thing for him to do; that he knew that he swore falsely in the justice's court upon his trial there, and that the People were able to show that he did, and that he felt very badly about the matter, and wanted to know the worst and have it all over; that when he was sworn in justice's court he did not realize that it was so serious a matter as he had found it out to be; that he was very sorry for what he had done, and that in future he would abstain from such conduct, and that when it was all over with he would quit the business that he was in and leave the country. I then asked respondent if, at the time he was sworn in the court below, he did not call to mind the case of the People against Frank Cobb, and the fact that a witness who was sworn upon that trial was afterwards sent to the penitentiary for four years for perjury committed by him thereon. He said that he remembered the case and knew of the fact, but that he did not think of it at that time. I then asked him how he came to have his bar-tender called as a witness upon his trial to swear falsely in his behalf, and he said he did not know how he came to do it, but that he was very sorry that he did do it. I then told him that several of his friends had approached me, and had requested that I should suspend sentence in his case, but that I had not given them any reason to expect that I would do so; that I was glad to find that up to the time

that he left the employ of Mr. McCourtie and went into a saloon that his character had been good; that that would be taken into consideration and would lessen his punishment; that it would have been better to have taken Mr. McCourtie's advice not to go into such a business; that I trusted that after he had undergone the punishment which would be imposed upon him he would in the future refrain from the commission of crime of any kind, which he assured me he would do. He then stated that he thought the punishment that he had already undergone had been very severe; that he had a wife and some children who needed his assistance, and that he hoped that I would be as lenient with him as possible; that he had never been in jail before, and that if I would not send him to the penitentiary he would immediately quit the business he was in and leave the State. I told him I was very sorry for him and for his family, and that while, in view of all the circumstances, the punishment which he would receive would be light, I should feel it my duty to impose such a punishment as would serve as a lesson to him and to others who might be tempted to give false testimony in a court of justice.

"And I further return that during the interview the respondent seemed very penitent, and cried during most of the time.

"And I further return that I am unable to detail further what took place at the interview, but certify that the foregoing is the substance thereof, and that I became satisfied then, and am now satisfied, that the plea of guilty interposed by the respondent was entirely voluntary and made understandingly, and that he was fully aware of the nature of the offense imputed to him, and of the extent of the punishment which might be imposed upon one guilty thereof.

"And I further return that after the interview I told the respondent to take a seat in the court-room, and that as soon as court was in session I told the respondent to stand up, and then asked his counsel if he desired to be heard in the matter."

The judge then proceeds to give the speech of counsel in behalf of his client, in the course of which counsel presented a petition, said to be signed by thirty-five "prominent citizens," requesting a suspension of sentence. Counsel said: "It has not been sought by the circulator of this petition, I am informed, to increase the names to a large number, which

he could easily have obtained, but only to show your honor what seems to be the sentiment of the entire community." No suggestion was made by counsel that the plea of respondent was not entirely voluntary. The judge then sets forth at length his own address to the respondent, in the course of which he referred to the petition which had been presented, and assigned reasons for not complying with it. The judge's return concludes as follows:

"And I further certify that, upon investigation of the respondent's antecedents and previous history, I found that prior to the time that he engaged in the business of selling liquor he had been a reputable citizen, but that the place which he had for some time been keeping was known as 'The Kitchen,' and as one of the lowest places in Kalamazoo —a resort for prostitutes and thieves; that he was arrested in the summer for violation of the liquor law by keeping his saloon open on Sunday; that he was tried therefor, and, with his bar-keeper, was sworn upon that trial, and afterwards charged with the commission of perjury, to which he plead guilty; that after he had been convicted of such violation of the liquor law, and was awaiting trial for the offense of perjury, he again kept open his saloon on Sunday, and sold liquor to a common drunkard, for which offense he was also arrested, and plead guilty and was fined. In view of all this, as well as in view of the enormity of the offense with which he was charged, I did not feel it my duty to suspend sentence in his case, but imposed the lightest sentence which, under the circumstances, I could consistently do.

"And I further return that I communicated to no person, before passing sentence upon said Brown, what sentence I should impose, and that I was not approached by the prosecuting attorney in behalf of said Brown, and intimated to no one what the sentence would be."

The affidavit of the prosecuting attorney, referred to in the return, states that "he has read a copy of an affidavit filed in the Supreme Court, made by one John Brown, to obtain a writ of certiorari, and in answer thereto states that he never approached said Brown to talk with him about his case, nor advise said Brown to change his plea of not guilty to guilty, saying to said Brown that he would get a lighter sentence, if any at all, or words to that effect, or that he

would use his influence to have the circuit judge suspend sentence in his case. And deponent further says that he never told said Brown that if he pleaded guilty he would use his influence, and help him all he could with the judge, to have the sentence in his case suspended, or to get him a lighter sentence, or no sentence at all."

The foregoing sufficiently presents the record upon which a reversal of the judgment was demanded in this Court.

I. The information is said to be fatally defective. Several defects are pointed out, one of which is that the information does not affirmatively show that the respondent became a witness at his own request. This is supposed to be necessary under the statute, How. Stat. § 7544, which provides that "a defendant in any criminal case or proceeding shall only *at his own request* be deemed a competent witness," etc. The information alleges that the respondent appeared as a witness "on his own behalf;" and he must, therefore, have appeared voluntarily, and expressly or by implication have requested to be sworn. There is nothing in the point. Another supposed defect is in respect to the materiality of the false statements. It is said the information itself shows they were not material, because it shows that the defendant himself testified to the saloon being open on the morning of Sunday, and thereby admitted his guilt: *People v. Waldvogel* 49 Mich. 337 ; so that all he swore to about the place not being open in the afternoon, and liquor not being sold there during the day, was wholly immaterial. It may be, as counsel contend, that the respondent testified to that which should have insured his conviction ; but it is not said, nor are we prepared to believe, that when he was giving his evidence he supposed he was admitting his guilt. On the contrary, it is very manifest that he intended to make his evidence sufficiently strong to disprove all criminal intent, and that he expected the jury to excuse the casual opening of the door in the morning, when he showed that throughout the day there had been no sale of intoxicating drinks. But it is immaterial now what he expected, or what views he or his counsel may have urged before the jury ; it is enough for the

purposes of this case that the false evidence bore directly upon the issue, and was in flat contradiction of much of the evidence put in by the prosecution, upon which a conviction was sought.

Some still more technical objections to the information do not appear to us sufficiently plausible to require attention.

II. The principal ground relied upon by the respondent for a reversal is that he did not voluntarily plead guilty. The evidence of this must be found in the return of the judge to the writ of certiorari. We cannot have any other. The judge, under the statute, is to satisfy himself by private examination on that subject, and if satisfied is to proceed to judgment. How. Stat. § 9558; *Edwards v. People* 39 Mich. 760; *Henning v. People* 40 Mich. 733; *Clark v. People* 44 Mich. 308; *People v. Ferguson* 48 Mich. 41; *People v. Stickney* 50 Mich. 99. It is said that much of the judge's return is surplusage, and that the affidavit of the prosecuting attorney was no proper part of it; but, under the circumstances, we do not think the judge is to be criticised for the manner or matter of his return. The affidavit for a certiorari was a serious impeachment of both the judge and the prosecuting officer; and while what was said of the latter officer could have had no legal bearing upon an inquiry which concerned no other question than whether the judge had properly satisfied himself that the plea of the respondent was voluntary, it was still not improper that he should put upon record the explicit denial of the prosecuting attorney that he had been guilty of the misconduct imputed to him. And it was certainly entirely proper for the judge to meet as fully as he has done the charge that he had failed in the performance of his own duty.

The only question now to be passed upon is whether it appears from the judge's return that he failed to perform his duty in his inquiry into the circumstances preceding and attending the plea of guilty. Counsel contend that it sufficiently appears that the plea was not voluntary, and they recapitulate the preceding facts as proof that this must have been the case. Among other things, we are told " that a

strong public sentiment had been raised in favor of a suspended sentence in this case, as shown by the remarkable petition presented to the court in his behalf, signed by thirty-five of the most prominent citizens of the city of Kalamazoo. Such an effort made in behalf of this man could not have any other effect upon his mind than that which is alleged in his affidavit." It may be well to pause for a moment upon this petition. Coming from such a source it must certainly merit some attention.

How the public sentiment was "raised" which induced this petition we are not informed; but it will probably be safe to assume that any effort there may have been in that direction was not put forth by the prosecution. That the petition was "remarkable" is made plain enough by several facts. It is certainly remarkable that respectable members of any community should desire and request that a person who had committed two serious crimes to hide one petty one should be turned loose without punishment, among them; and the wonder increases when we perceive that, in order to preserve him for society, they formally request the judge himself, a high state official, and the chief conservator of law and public order in that part of the State, to grasp at power not confided to him, and usurp authority in the interest of a doubly convicted offender. That there may be no misapprehension on this point, it is only necessary to understand exactly what it was the judge was requested to do. In terms it was to suspend sentence. Now it is no doubt competent for a criminal court, after conviction, to stay for a time its sentence; and many good reasons may be suggested for doing so; such as to give opportunity for a motion for a new trial or in arrest, or to enable the judge to better satisfy his own mind what the punishment ought to be: *Commonwealth v. Dowdican's Bail* 115 Mass. 133; but it was not a suspension of judgment of this sort that was requested or desired in this case; it was not a mere postponement; it was not delay for any purpose of better advising the judicial mind what ought to be done; but it was an entire and absolute remission of all penalty and the excusing of all guilt. In other words,

what was requested of the judge was that he should take advantage of the fact that he alone was empowered to pass sentence, and by postponing indefinitely the performance of this duty indirectly but to complete effect grant to the respondent a pardon for his crime.

Now it cannot for a moment be supposed that any thirty-five intelligent citizens of this State are ignorant of the fact that the power to pardon is an executive power, expressly vested by the Constitution of the State in the Governor and exclusively belonging to his office. And knowing that fact, as these petitioners must have done, they could scarcely fail to understand that this judge would be usurping the functions of the executive were he to assume to give total immunity from punishment. No doubt judges have done this sometimes, under the pressure of such influence as appears here; but this is no reason for asking a repetition of the wrong: it is rather a reason for being specially careful and particular not to invite it, lest by and by it come to be understood that the power to pardon, instead of being limited to one tribunal, is confided to many, and that the pressure of influence and respectability may be as properly employed with a judge to prevent sentence, as many seem to think it may be with a Governor to procure a formal pardon. The presentation of the petition was therefore a very great impropriety; and the judge treated it with a consideration, which, though it may have been called for by the prominence of the signers, was certainly not due to its prayer or purpose.

Probably the success of the effort to get names in the respondent's behalf did not impress the circuit judge very much, or convince him of the reality of any very strong desire on the part of the community to retain association with the respondent and have the benefits of his presence in the community. The intimation of the respondent to the judge that if pardoned he would leave the country it may well be supposed had been given to others also, and possibly names were given to the petition on an expressed or implied understanding that the respondent, if pardoned, should depart to some other state. But however that may be, the judge is

to be commended for refusing to recognize it as a ground of pardon that the offender consents to make some other community the field of his future activity. And whatever hopes the petition had raised in the mind of the respondent, were hopes which were in no respect attributable to the judge; he did not invite the petition; it was gotten up in the interest if not by the procurement of the respondent; and it is made entirely clear by the judge's return that he never gave any person reason to believe he would suspend judgment because of the petition or for any other reason. The most that can be fairly imputed to the judge is an excess of patience in listening to the importunities. It was a natural consequence that he should on one occasion have been imprudent enough to intimate a purpose to impose a lighter sentence in case of conviction on plea of guilty than upon conviction by a jury. The importunities drew out from him that much; and it may be assumed that it possibly had some effect upon respondent's mind.

Had an intimation of the sort been made by way of threat, and a plea of guilty been secured thereby, the judgment upon the plea ought to be set aside. *O'Hara v. People* 41 Mich. 623. And even though not given by way of threat, had a sentence of great severity followed, it might have been apparent that the defendant had been wronged. But in this case, what was said was evidently only by way of partial concession to the respondent's friends who were pressing for a suspension of sentence. The judge gave all parties to understand that they could have no assurance of a compliance with their own request; but he intimated a willingness to be lenient in punishment. This intimation he acted on,—imposing a punishment which was only one-tenth of the maximum punishment allowed by law. In view of all the facts, as the judge understood them, the punishment was a very light one. Moreover, it is to be noted that, after this single inadvertent remark by the judge, he had a full and apparently very free talk with the respondent, in which he gave him distinctly to understand that, upon the plea of guilty, he should inflict punishment by way of example; and the respondent, after

this conversation, had no excuse for an understanding or expectation that he would be let off on suspended sentence, or on a merely nominal punishment. Having suffered his plea of guilty to stand after that interview, he has no ground for complaint now. The judge is not chargeable with having raised hopes and then disappointed them, or with having in any manner misled him. The respondent had treatment at his hands more deserving of thanks than of complaint; and when we consider the statements made in the affidavit for a certiorari, and how completely these are met by the return and by the affidavit of the prosecuting attorney, it is greatly to be feared that the willingness to prevaricate under oath, when it seemed probable that something might be gained by it, was not wholly eradicated by the punishment inflicted.

The conviction is affirmed.

The other Justices concurred.