PEOPLE *ex rel.* BENTON, District Attorney, *v.* COURT OF SESSIONS OF MONROE COUNTY.

*(Supreme Court, Special Term, Monroe County. June, 1892.)*

1. CRIMINAL LAW—SENTENCE—RIGHT TO SUSPEND DURING GOOD BEHAVIOR.
     Where a person pleads guilty to an indictment, it is the imperative duty of the court to impose the sentence prescribed by law, and it cannot, on petition of citizens showing that defendant has made restitution to those injured by his crime, suspend sentence during good behavior, since that would be an exercise of the pardoning power, which the constitution (article 4, § 5) vests in the governor.

2. SAME—REFUSAL TO IMPOSE SENTENCE—MANDAMUS.
     Where the court improperly refuses to impose sentence in a criminal case, *mandamus* will lie on the relation of the district attorney to compel it.

Petition by George A. Benton, district attorney of Monroe county, for a writ of *mandamus* to compel the court of sessions of said county to impose sentence in a criminal case. Writ granted.

*George A. Benton*, Dist. Atty., for relator. *H. B. Hallock*, for respondent.

DAVY, J. It appears from the relator's petition, presented upon this application, that John Attridge, of the city of Rochester, who was in the employ of Brewster, Crittenden & Co., as salesman and collector, wrongfully appropriated to his own use nearly $2,000 of the firm's money, for which crime he was indicted by the grand jury of Monroe county in January, 1892, for grand larceny in the second degree. The indictment was sent from the oyer and terminer to the court of sessions of Monroe county, where Attridge was arraigned and pleaded guilty, and was sentenced by Judge WERNER, the presiding judge of said court, to be confined in the Elmira reformatory until discharged according to law. From this sentence the two justices of the sessions, FULLER and COLBY, dissented, holding that sentence should be suspended. Attridge was then remanded to the custody of the sheriff, and subsequently taken, upon a writ of *habeas corpus*, before Mr. Justice ADAMS, who held that the sentence imposed by Judge WERNER, and dissented to by his associates, was illegal, and for that reason the defendant must be remanded to the custody of the sheriff, in order that the court of sessions might pronounce a legal sentence. Thereafter and on the 14th day of March, Attridge appeared in the court of sessions, and the district attorney again moved that he be sentenced. Thereupon Justices FULLER and COLBY announced as their decision that "sentence is suspended during the good behavior of the defendant," Judge WERNER dissenting. The return, which is signed by the two justices of the sessions, admits all the facts alleged in the petition. Their excuse, however, for suspending sentence, is that when the defendant pleaded guilty there was presented to the court a petition, signed by a large number of prominent citizens of Rochester, requesting that sentence be suspended for the reason that the defendant had made good his defalcation; that he was a young man, who had always maintained a good character up to the time of

committing the crime for which he was indicted, and that by suspending sentence it would probably result in his becoming a good and useful citizen; that in suspending sentence they exercised a discretion which they supposed was vested in the court; and that they acted in accordance with the practice and custom of said court since they had been members thereof. Application is now made to this court by the district attorney for a peremptory writ of *mandamus* requiring the court of sessions to cause the defendant, Attridge, to be brought before it, and to impose such sentence upon him as is required by law. So that the principal question to be considered and decided upon this application is whether the court of sessions of the county of Monroe had power to suspend sentence in *Attridge's Case* during his good behavior; or, in other words, whether the court failed to perform its duty, as required by law, in suspending sentence.

From the statute laws of this state the criminal courts derive their authority and power to prosecute criminals. The Code of Criminal Procedure prescribes the method of conducting trials in criminal actions prosecuted by indictment. The legislature, in adopting this Code, intended to establish a complete system of criminal practice. It provides what proceedings may be taken by the defendant both before and after indictment. It also provides upon what grounds a motion may be made by the defendant in arrest of judgment. Sections 312, 313, 328, 329, 332. The Penal Code directs what punishment shall be imposed by the court whenever a person is convicted or pleads guilty to a crime for which he has been indicted. A motion in arrest of judgment is defined by the Code of Criminal Procedure (section 467) to be an application on the part of the defendant that no judgment be rendered on a plea or verdict of guilty. This application, however, must be made for some defect which appears on the face of the record, (*People* v. *Kelly*, 94 N. Y. 527,) or on the ground that the defendant has become insane since he was convicted, (section 481.) The court in which a criminal trial has been had has also ample authority to grant a new trial when a verdict has been rendered against a person by which his substantial rights in some way have been prejudiced. Code Crim. Proc. § 465. After a plea or verdict of guilty, if the judgment is not arrested or a new trial granted, the court must appoint a time for pronouncing judgment. Section 471. The time appointed must be at least two days after the verdict, if the court intend to remain in session so long, or, if not, as remote a time as can reasonably be allowed. Section 472. At the time appointed, if no sufficient cause be alleged or appear to the court why judgment should not be pronounced, it must thereupon be rendered. Section 482. A judgment in a criminal case, upon conviction or a plea of guilty, is the sentence of the court. FOLGER, J., in the case of *Manke* v. *People*, 74 N. Y. 415, says: "The sentence given by the court upon a conviction in a criminal case is the final judgment." Section 12 of the Penal Code also declares that the several sections of that Code, which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence to determine and impose the punishment prescribed by law. The very language of the above sections shows that the legislature meant to impose a positive and absolute duty upon the criminal courts of this state to pass sentence after a person was legally convicted of a crime, unless sentence was stayed for sufficient cause authorized by law. The application in this case to suspend sentence, or for an arrest of judgment, was not based upon any grounds authorized by the Code. The regularity of the proceedings was not questioned. So that when the defendant pleaded guilty there was nothing remaining for the court to do except to pronounce sentence.

There is sufficient power in the executive branch of the state government to prevent punishment where punishment ought not to be inflicted. But the courts are not vested with any such power. The constitution of the state of New York vests the pardoning power exclusively in the governor. Ar-

ticle 4, § 5, provides that the governor shall have the power to grant reprieves and pardons after conviction for offenses, except treason and cases of impeachment, upon such conditions, and with such restrictions and limitations, as he may think proper.  A "pardon" is defined by Chief Justice MARSHALL "as an act of grace proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for the crime he has committed."  *U. S.* v. *Wilson,* 7 Pet. 159.  "Punishment," says Mr. Wharton in his Law Lexicon, "is the penalty for the transgression of the law."  What the court did in this case was an act of grace, which exempted the defendant from punishment during good behavior.  It is contrary to the spirit of our constitution and laws for courts to permit a person who has been convicted of a crime to enjoy privileges and advantages which are denied to others under like circumstances, or that one person should be subject to punishment for a crime, and others who have committed similar crimes should be exempt from punishment, during good behavior, because they happen to have influential friends to intercede for them.  The object in punishing criminals is not merely to reform them, but to deter them and others from committing like offenses, and to protect society.  When the legislature prescribed the punishment that must be imposed when a person is legally convicted of a crime, it had in view the well-being, good order, and security of the community.  When a party pleads guilty or stands convicted of a crime, and all the remedies provided by law for testing the correctness of the conviction have been exhausted or waived, it then becomes the duty of the court to pronounce sentence, and in doing so to exercise such discretion, as to the extent of the punishment, as the statute authorizes the court to exercise in such cases.  It is no doubt competent, under the Code of Criminal Procedure, for a court, after conviction, to suspend judgment temporarily, to permit the defendant to move for a new trial or to perfect an appeal, or to allow the court time to consider and determine the sentence to be imposed, or for any other reason authorized by law.  *People* v. *Morrisette,* 20 How. Pr. 118; *People* v. *Reilly,* 53 Mich. 260, 18 N. W. Rep. 849; *People* v. *Brown,* (Mich.) 19 N. W. Rep. 571.

It was not a suspension of judgment authorized by the Code that was requested or desired by the defendant or his friends.  What was asked of the judges was that the sentence to be imposed as required by law should be suspended, and that the defendant should be discharged during his good behavior.  If such power can be exercised by a court, it incorporates into our administration of criminal justice a very uncertain system, and one which places the criminal who has been convicted or pleads guilty to a crime at the caprice of a judge who may permit him to go at large, but subject to being called up for sentence at any time, in his discretion.  If a court can suspend sentence during good behavior, in a case of grand larceny, why may it not in a case of murder?  If it can delay sentence for six months or a year, I do not see why it may not be delayed for twenty years.  To sanction the exercise of such power under our form of government and under our system of criminal jurisprudence would be revolting to our sense of justice.  The law requiring courts to pronounce sentence in a proper case is mandatory.  This imperative duty is imposed upon the court for the protection of the public, and to prevent a failure of justice, and, when the justices of the sessions in this case refused to sentence the defendant, they failed to do what the law plainly required them to do.

The learned counsel for the defendant contends that it has been customary for the courts to suspend sentence in certain cases during good behavior, from the earliest history of jurisprudence in England and in this country down to the present time.  Conceding that statement to be true, I am not aware, however, that custom can abrogate or annul a statute law which requires the courts to impose sentence where a person has been legally con-

victed of a crime. The mere fact that courts have been in the habit of suspending sentence in certain criminal cases does not establish their legal right to do so. It was held in the case of *Rex* v. *Mayor, etc.*, 4 Dowl. 562, that, when a charter is granted by an act of parliament to a corporation to hold a court for the trial of causes, the disuse of the court for 200 years, and the want of funds to hold it, was no answer on application for *mandamus* commanding them to hold it. PATTESON, J., in granting the writ, says: "I do not think I have any discretion on the subject. Power to hold this court being granted by charter, I do not think the corporation can lay it aside merely on the ground of want of funds, nor on the ground that no court has been held for two hundred years." In the case of *King* v. *Mayor of Hastings,* 1 Dowl. & R. 148, a similar question arose. The court held that words of permission in act of parliament, if tending to promote the public benefit, are always held to be compulsory. Whenever the law requires a thing to be done, and the public at large are interested in the doing of it, a *mandamus* will lie to compel the performance of that act. The criminal courts of this state are the people's courts, who have a right to insist that such courts, in the trial, conviction, and sentence of criminals, shall comply with the law, instead of custom. The law requiring judges to impose sentence upon persons legally convicted of a crime is mandatory, and where they refuse to perform that duty a writ of *mandamus* is the proper remedy to compel performance. The application for a peremptory writ of *mandamus*, requiring the court of sessions of Monroe county to cause the defendant to be brought before it, and to impose such sentence as is required by law, is granted.