PEOPLE *v.* EAREGOOD.

OPINION OF THE · COURT.

1. CRIMINAL LAW—SENTENCING—REMARKS OF TRIAL JUDGE.
   Sentence by trial judge in prosecution for assault with intent to
   do great bodily harm less than murder must be set aside where
   it appears from trial judge's own remarks, made generally at
   start of criminal calendar call, that he imposed a harsher sen-
   tence on defendants who delayed in entering a plea of guilty
   (CL 1948, § 750.84).

2. SAME—PLEA OF GUILTY—TRIAL JUDGE.
   A trial judge may not properly encourage a defendant to plead
   guilty or impose a penalty for not pleading guilty in the form
   of an increased sentence upon one convicted after a trial.

3. SAME—PLEA BARGAINING—SENTENCE CONCESSIONS—TRIAL JUDGE.
   Trial judge who adopts a practice of granting sentence conces-
   sions to those who plead guilty cannot avoid covert participation
   in the plea-bargaining process where his sentencing practices
   become a known fact, reliance upon which forms the basis for
   negotiations between prosecutor and defendant.

4. SAME—PLEA BARGAINING—SENTENCE CONCESSIONS—TRIAL JUDGE.
   Trial judge is unavoidably a participant in the plea-bargaining
   process if he permits disclosure to him of agreement between
   prosecutor and defendant as to sentence and reveals his reasons
   for disagreement with such a recommended disposition.

5. SAME—PLEA BARGAINING—REPENTANCE.
   The plea-bargaining process cannot be defended as encouraging
   genuine repentance on the part of criminals since the pleas

REFERENCES FOR POINTS IN HEADNOTES

[1–7] 21 Am Jur 2d, Criminal Law §§ 485, 492, 495.
[8, 10] 21 Am Jur 2d, Criminal Law § 485.
[9] 5 Am Jur 2d, Appeal and Error §§ 704, 895.
[11] 5 Am Jur 2d, Appeal and Error §§ 648, 649, 780.

of guilty obtained thereby are not only obtained by bargaining with a view to gain but are as likely to produce recriminatory remorse against the procedure itself as genuine repentance for crime.

6. SAME—PLEA BARGAINING—SENTENCE CONCESSIONS.

Disparity between sentences imposed upon those who plead guilty and those convicted upon trial resulting from granting of sentence concessions to encourage guilty pleas is to be condemned as a judicially imposed penalty for the exercise of constitutional rights.

7. SAME—PLEA BARGAINING—PARTICIPATION BY TRIAL JUDGE.

Participation by trial judge in plea-bargaining process, while promotive of an easing in the backlogs of court dockets, diminishes the esteem of the public and the legal profession for the judiciary.

8. SAME — PLEA OF GUILTY — TRIAL JUDGE'S REMARKS — PROMISE-THREAT—PRESUMPTION OF INFLUENCE.

Once it is established that a trial judge's remarks constituted a promise or a threat to a defendant with respect to his plea, it will be presumed that such a promise-threat influenced the defendant in pleading guilty of the charge against him since the question of influence is as difficult to resolve as that of defendant's guilt itself.

DISSENTING OPINION.

QUINN, J.

9. COURTS—PROCEEDINGS—PRESUMPTION OF REGULARITY.

*All judicial proceedings in courts of general jurisdiction are presumed to be correct and regular in the absence of proof to the contrary.*

10. CRIMINAL LAW—PLEA OF GUILTY—INFLUENCE—REMARKS OF TRIAL JUDGE.

*Belated argument by defendant that trial judge's remarks influenced his plea of guilty cannot be accepted as proof of such influence where defendant asserted at time of plea that he pleaded freely and voluntarily without being influenced by threat or promise.*

11. SAME—APPEAL AND ERROR—BURDEN OF ESTABLISHING ERROR.

*Defendant bears burden on appeal of establishing reversible error, absent a showing of violation or denial of constitutional rights.*

Appeal from Genesee, Parker (Donn D.), J. Sub-
mitted Division 2 December 7, 1967, at Lansing.
(Docket No. 2,755.) Decided June 28, 1968. Re-
hearing denied August 23, 1968. Leave to appeal
granted November 20, 1968. See 381 Mich 787.

William Joseph Earegood was convicted on a plea
of guilty of assault with intent to do great bodily
harm less than murder. Reversed and cause re-
manded for trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, *Donald A. Kuebler* and *Paul
G. Miller,* Assistant Prosecuting Attorneys, for the
people.

*Pelavin & Pelavin,* for defendant on appeal.

Levin, J. The fundamental question presented
by this appeal is whether a trial judge may properly
reduce or enlarge a sentence based on the amount
of the court's time consumed before a defendant's
conviction.

The defendant Earegood pleaded not guilty to the
charge originally lodged against him at the arraign-
ment on the information, August 2, 1965. At the
criminal calendar call October 12, 1965, the defend-
ant demanded a jury trial. Shortly before he was
given an opportunity to do so the trial judge made
the following statement:

"I think it is about time to make my usual an-
nouncement, gentlemen. The purpose of this call
is to get pleas. If you are going to plead or waive
a trial by jury now is the time to do it, so we can
schedule. The court has a long memory, and all
this goes on record, and when it comes time for sen-

tence, if you plead or waive a jury at the last minute, it is a factor I take into consideration in sentencing. I am sure you all know the risk."

Thereafter, on November 16, 1965, the information was amended to add the count of assault with intent to do great bodily harm less than the crime of murder,[1] and the defendant pleaded guilty to that charge. The requirements of GCR 1963, 785.3 (2) were complied with before acceptance of his guilty plea.[2] The defendant was sentenced on December 17, 1965.

---

[1] CL 1948, § 750.84 (Stat Ann 1962 Rev § 28.279).

[2] It appears that on June 20, 1965, John Henry Parsons transported in his car the defendant, Charles Lloyd Guenther, Carl Eugene Olmstead and an unidentified female. During the trip the car was stopped; defendant and the female got out and moved some distance from the car. Thereafter, at knifepoint, and with the assistance of Olmstead, Guenther took $2.50 from Parsons. A short time later, it appears that defendant assisted Olmstead and Guenther in throwing Parsons, tied hand and foot, into the river. Parsons survived the ordeal. The defendant, Olmstead, and Guenther turned themselves in to the police.

The 3 were originally charged in a single warrant with armed robbery (CLS 1961, § 750.529 [Stat Ann 1968 Cum Supp § 28.797]) and assault with intent to murder (CL 1948, § 750.83 [Stat Ann 1962 Rev § 28.278]).

Defendant was represented at the preliminary examination by counsel and was arraigned on the information on August 2, 1965, stood mute, and a plea of not guilty was entered by the court. At the criminal calendar call, October 12, 1965, defendant requested a jury trial; it was immediately preceding such request that the objected-to remarks by the trial judge were made. Subsequently, on November 16, 1965, amended informations were filed, one charging Olmstead and Guenther with armed assault with intent to rob (CL 1948, § 750.89 [Stat Ann 1962 Rev § 28.284]) and the other charging the defendant with assault with intent to do great bodily harm less than the crime of murder (see footnote 1).

At the November 16, 1965, hearing an assistant prosecuting attorney stated that, insofar as Guenther and Olmstead were concerned, he thought the people could substantiate the amended charge of assault with intent to rob while armed, but that, as far as the defendant Earegood was concerned, he did not believe the people could prove either robbery armed or assault with intent to rob while armed. He added: "It isn't quite clear in the history or in the lower court exam as to when Earegood was subsequently picked up again and when he became a party with the 3, but I do feel he had something to do with this man being thrown in the river, although there isn't any testimony in the lower court exam by the complainant that at any time did William Joseph Earegood in any manner tie him up, and

As we read his remarks of October 12, 1965, the trial judge told all in the courtroom, including the defendant, that those who dilly-dallied in offering a guilty plea might expect to be dealt with more severely should they later decide to offer one. We take the judge at his word and assume he sentenced as he promised he would, and, thus, that Earegood's sentence was increased because he dawdled before pleading. Because a sentence may not be enlarged or reduced depending on the alacrity with which the defendant pleads guilty, the sentence must be set aside.

But Earegood also contends the trial judge's remarks influenced him to plead guilty. This contention presents several subsidiary questions:

— Did the trial judge's remarks in fact influence the defendant to plead guilty?

— Is the plea insulated from attack because it followed negotiations and an agreement that the de-

---

there isn't any explanation as to when they did pick Earegood up again."

Olmstead and Guenther then pleaded guilty to the amended charges against them. Earegood was then questioned by the court. He acknowledged he had discussed the proposed amended information with his attorney and knew the nature of the crime charged and that he had a right to a jury trial, and that the maximum penalty that could be imposed upon conviction was 10 years' imprisonment. He then stated he wished to plead guilty. In response to inquiries from the court he stated that he pleaded guilty freely and voluntarily, he had not been threatened in any way to secure the plea and that no promises of favor or leniency had been made. The following colloquy then took place:

"*The Court:* What part did you play in this matter?

"*Mr. Earegood:* I was there to help put him in the water.

"*The Court:* And did you help put him in?

"*Mr. Earegood:* Yes.

"*The Court:* What did you do?

"*Mr. Earegood:* Just helped throw him in the water.

"*The Court:* You were right there pushing, helping, is that right?

"*Mr. Earegood:* Yes.

"*Mr. Delaney* [*Earegood's attorney*]: I believe he lifted him out of the trunk, your Honor.

"*The Court:* Is that the part you played, you helped lift him out of the trunk?

"*Mr. Earegood (indicating affirmatively)."*

fendant would offer a plea of guilty to an added lesser offense?

— May a trial judge validly increase or reduce a sentence based on whether the defendant was convicted following a trial or a plea of guilty?

## I.

The courts hold with substantial unanimity that a trial judge may not properly encourage a defendant to plead guilty[3] or impose a penalty in the form

[3] See *Rogers* v. *State* (1962), 243 Miss 219, 229 (136 So 2d 331, 335) (judge actively engaged in persuading defendant to plead guilty, made promises and held out hope of lenient treatment at penitentiary. The Mississippi supreme court said: "His lawful duty was just the opposite—to see to it that a plea of guilty was voluntary.") See, also, *Mesmer* v. *Raines* (Okla Crim App, 1960), 351 P2d 1018 ("the court may not properly bargain with a prisoner to induce him to enter a plea of guilty"); *State* v. *Benfield* (1965), 264 NC 75, 77 (140 SE2d 706, 708) ("The fact that the court interrupted the hearing before all the evidence was in to express the opinion that the jury would convict defendant, followed by the statement that, if convicted, defendant could expect 'a long sentence,' necessarily leads, we think, to the conclusion that defendant changed his plea from not guilty to guilty because of what the judge said."); *McClure* v. *Boles* (ND W Va, 1964), 233 F Supp 928 (approving plea bargaining between prosecutor and defendant adding: "It goes without saying, of course, that the court cannot be party to such inquiries or arrangements").

See, also, *People* v. *Farina* (1956), 2 App Div 2d 776 (154 NYS2d 501) (defendant entitled to withdraw his plea of guilty even though judge's promise as to sentence length fulfilled); affirmed *People* v. *Farina* (1957), 2 NY2d 454 (141 NE2d 589). Similarly, see *United States, ex rel. Elksnis,* v. *Gilligan* (SD NY, 1966), 256 F Supp 244; *People* v. *Guiden* (1958), 5 App Div 2d 975 (172 NYS2d 640).

Accord: *Letters* v. *Commonwealth* (1963), 346 Mass 403 (193 NE 2d 578) (defendants told maximum sentences permissible would be given on conviction and lesser sentences would follow a plea of guilty). Similarly, see oft-cited *Euziere* v. *United States* (CA 10, 1957), 249 F2d 293, 295. And in another similar case, *United States* v. *Tateo* (SD NY, 1963), 214 F Supp 560, the court said defendant's right to require the government to establish his guilt (p 567) "should not be exercised under the shadow of a penalty". On re-trial, defendant's claim of double jeopardy was rejected. *United States* v. *Tateo* (1964), 377 US 463 (84 S Ct 1587, 12 L Ed 2d 448), Justices Goldberg, Black and Douglas dissenting, stated that the defendant had been subjected to "judicial coercion". 377 US 463, 473.

See, also, *Commonwealth* v. *Senauskas* (1937), 326 Pa 69, 71, 72 (191 A 167, 168) ("It may be stated generally that for a judge to make a bargain, engagement, or promise in advance of the hearing of a case, irrespective of what the evidence might thereafter show the facts to be and as to what judgment he should render therein, would

of an increased sentence[4] upon one convicted after
a trial.

Most judges would probably agree it is improper
for a trial judge to influence a defendant's decision

be judicial misconduct. Such agreements have uniformly been held
to have no binding effect, and they are incompatible with the powers
or duties of a judicial officer."), followed in *Commonwealth, ex rel
Kerekes*, v. *Moroney* (1966), 423 Pa 337, 349 (223 A2d 699, 705),
where the court approved prosecutor-defendant plea bargaining, but
opined that judge-defendant sentence bargaining should not be per-
mitted; *Waddy* v. *Heer* (CA 6, 1967), 383 F2d 789, 793, dictum that
"the promise of a lesser penalty by a judge as an inducement for a
plea of guilty [was] properly condemned" in certain cases previously
cited; compare *Worcester* v. *Commissioner of Internal Revenue* (CA
1, 1966), 370 F2d 713, 718 ("It is no answer to say that the defend-
ant need not accept the court's 'offer'. The vice is that vis-a-vis the
court he is in an unequal position.")

Contrast: *United States, ex rel. McGrath*, v. *LaVallee* (CA 2,
1963), 319 F2d 308, where it was claimed the trial judge promised
defendant consideration should he plead guilty. The court of ap-
peals ordered an evidentiary hearing. On a subsequent appeal the
trial judge's determination that there was no coercion was sustained
as not clearly erroneous. *United States, ex rel. McGrath*, v. *LaVallee*
(CA 2, 1965), 348 F2d 373. Mr. Justice Marshall, then a Federal
circuit judge, dissented from the first opinion stating that the tran-
script undisputably showed improper influence by the trial judge.
The trial judge had stated to the defendant (p 320): "If you are
convicted as a second offender of robbery in the first degree, you will
be entitled to no consideration of any kind from me." Mr. Justice
Marshall declared (pp 319, 320): "Our concept of due process must
draw a distinct line between, on the one hand, advice from and 'bar-
gaining' between defense and prosecuting attorneys and, on the other
hand, discussions by judges who are ultimately to determine the
length of sentence to be imposed. This is especially true when, as
here, conference in chambers is ordered by the judge himself without
any apparent request by either defendant or prosecutor." See, also,
*United States* v. *Cariola* (CA 3, 1963), 323 F2d 180, where the court,
24 years after sentence, refused to set aside a plea of guilty offered
following a sentence commitment; the commitment and the sentence
in fact meted out was for the defendant to spend the balance of the
day of sentence in the courtroom; the majority stated it did not "con-
done" or deem "salutary" the practice followed. Chief Judge Biggs
dissented because the plea was induced by a sentence promise from
the judge himself. It is apparent from the report in *People* v.
*Darrah* (1965), 33 Ill 2d 175 (210 NE2d 478), that an agreement
regarding sentence had been reached before the guilty plea was
offered and that the judge had at least discussed the matter with the
defendant's attorney before he pleaded guilty. Nevertheless, the
court refused to set aside the plea because there was no proof the judge
*initiated* the discussions.

4 *Letters* v. *Commonwealth, supra*, 405 (193 NE2d 578, 580): "a de-
fendant, whatever his character, may not be punished for exercising
his right to trial and, therefore, the fact that he had done so should
be given no weight in determining his sentence."

whether to plead guilty and, thus, on this point at least, practice in general conforms to the judicial statements.

In *Thomas* v. *United States* (CA 5, 1966), 368 F2d 941, 944, 946, at sentencing the trial judge stated that if defendant admitted his guilt the judge would take that into account and if he persisted in asserting his innocence that too would be taken into account. He asked the defendant, "Which will it be?"; defendant responded, "I am innocent." Defendant was sentenced to the maximum term permitted by law. In vacating the sentence the court of appeals stated: "When Thomas received harsher punishment than the court would have decreed had he waived his Fifth Amendment rights, he paid a judicially imposed penalty for exercising his constitutionally guaranteed rights. Upon that ground alone, we think that his sentence is 'subject to collateral attack' ".

In *People* v. *Moriarty* (1962), 25 Ill 2d 565, 566, 567 (185 NE2d 688, 689), at sentencing the trial judge indicated that had the defendant pled guilty instead of being convicted by a jury a lesser sentence would have been imposed. In vacating the sentence the supreme court of Illinois declared: "A defendant in a criminal case should not be punished by a heavy sentence merely because he exercises his constitutional right to be tried before an impartial judge or jury."

In *Gillespie* v. *State* (1960), Okla Crim, 355 P2d 451, the cause was remanded for reconsideration of the defendant's application for a suspended sentence which had been rejected solely because the defendant had tried his case before a jury. The court of criminal appeals of Oklahoma stated (p 456): "A policy designed to deny defendant a suspended sentence solely because he demanded a jury trial is contrary to law and an unjustifiable denial of defendant's rights to have his application for a suspended sentence considered upon its merits."

See, also, *United States* v. *Wiley* (CA 7, 1959), 267 F2d 453; *United States* v. *Wiley* (CA 7, 1960), 278 F2d 500; *United States* v. *Wiley* (ND Ill, 1960), 184 F Supp 679. In *Wiley*, a first offender went to trial in a relatively minor felony case, was convicted and received a sentence of 3 years. His co-defendant, who had 4 prior felony convictions and pled guilty, received a sentence of 2 years. At sentencing the trial judge stated he did not consider probation for Wiley because he had been convicted following a trial. On appeal, Wiley's conviction was affirmed, but the appellate court remanded the case to the district court for consideration of probation. The district court refused to change the sentence and on the second appeal the appellate court again remanded for resentencing, following which the district judge reimposed the 3-year sentence and suspended its execution.

The opinions of the appellate court in *Wiley* referred to the fact that Wiley's defense was not frivolous. In *People* v. *Morales* (1967), 252 Cal App 2d 537 (60 Cal Rptr 671), it appeared a heavier sentence was imposed because the defendant, "although lacking a meritorious defense", pled not guilty and demanded a jury trial. The California court of appeals ruled (p 677) "that a trial court cannot impose a more severe punishment on the basis of its conclusion that a defendant who has pled not guilty presented a frivolous defense or one which

"The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice." *United States, ex rel. Elksnis,* v. *Gilligan* (SD NY, 1966), 256 F Supp 244, 254.

However, despite appellate court statements to the contrary (see footnote 4), many trial judges think it entirely proper to count against the defendant the fact that he has put the State to the expense of a trial, and sentence one convicted following a trial more heavily than if he had pled guilty.[5]

---

the court concludes was presented in bad faith. Any such implications in the *Wiley* cases are rejected by this court."

Contrast *State* v. *Tuttle* (1963), 21 Wis 2d 147, 153 (124 NW2d 9, 12) (The Wisconsin supreme court said that although the defendant was not entitled to leniency for "confession and repentance", the merits of the case warranted sentence in a lower range than that meted out; the court held it was improper to fine a trial-convicted traffic offender at upper level of statutory range because of his lawyer's discourtesy to court) ; *People* v. *Guiden, supra,* 976 (172 NYS 2d 642) : "it is an abuse of judicial discretion to impose additional punishment upon a defendant either because his counsel refused to advise him to plead guilty, or as a warning or 'barometer' to members of the bar," but "acceptance of pleas of guilty to lesser offenses with consequent lighter sentences is perfectly appropriate." See, also, *State* v. *Owens* (1958), 21 Conn Sup 418 (158 A2d 867).

Compare *People* v. *Mulier* (1968), 12 Mich App 28 (imposition of a harsher sentence following a re-trial where no grounds therefor are shown in the record infringes Michigan's constitutional right of appeal; in an opinion by Chief Judge LESINSKI comprehensively reviewing the case law in other jurisdictions both favoring and opposing this view.)

[5] 66% of the Federal district judges who responded to a Yale Law Journal questionnaire considered defendant's plea a relevant

This sentencing practice finds support in the American Bar Association's recently adopted Standards Relating to Pleas of Guilty (standard 1.8; quoted in full in footnote 8).[6] The standards state it is proper for a trial judge to grant sentence concessions to those who plead guilty as long as the judge himself does not participate in the bargaining (standards 3.3[a] and 1.8[a], discussed in part II, *infra*).

The commentary accompanying the standards takes no notice of either the relatively few supportive or the greater number of contrary judicial state-

---

factor at sentencing, with the diminutions varying from 10% to 95% of the punishment which would ordinarily be given if the defendant were convicted following a trial. Note, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale L J 204, 206 (1956). See, also, Newman, Conviction: The Determination of Guilt or Innocence Without Trial, p 89 (1966).

See, also, Pilot Institute on Sentencing under the auspices of the Judicial Conference of the United States (1959), 26 FRD 231, expressing competing views of several judges who participated in the institute.

In *Dewey* v. *United States* (CA 8, 1959), 268 F2d 124, 128, the Court of Appeals took "judicial notice of the fact that trial courts quite generally impose a lighter sentence on pleas of guilty than in cases where the accused pleaded not guilty but has been found guilty by a jury."

In Detroit, where plea bargaining discussions center around potential charge reduction, in contrast with other jurisdictions where it is customary to seek prosecutorial recommendations to the sentencing judge in exchange for a guilty plea, practice probably conforms with the appellate court statements, although there is a lingering belief on the part of counsel, defense and prosecutors, that stricter sentences will be meted out to those convicted following a trial:

"In bargaining for a plea of guilty to a lesser offense, the prosecutor may intimate to the defense that the fact the county is saved the cost of a contested trial will be taken into account in sentencing. Judges uniformly stated that they did not let insistence upon a trial influence their sentencing decisions, but defense counsel and prosecutors were of the impression that the judges, perhaps subconsciously, did indeed hand down stricter sentences when a trial was insisted upon and the evidence overwhelmingly established guilt." Law Enforcement in the Metropolis, a working paper on the criminal law system in Detroit, American Bar Foundation, p 156 (1967). The report concerns the recorder's court of the city of Detroit.

[6] Originally proposed in a tentative draft February, 1967, as part of the Association's Project on Minimum Standards for Criminal Justice. The standards were partly revised in December, 1967, and were adopted by the governors of the American Bar Association in February, 1968.

ments (see footnote 4), but rather relies on its own exegesis.

In those jurisdictions where plea bargaining focuses on the granting of sentence concessions, the present high proportion of guilty pleas is no doubt in part explained by the practice of granting such concessions or at least leading defendants to believe they will be granted. In proposing as a national standard the practices followed in those jurisdictions, practices contrary to most appellate court statements on the matter, ABA guilty pleas standard 1.8 (discussed in part III, *infra*) offers a truly minimum standard.[7] That standard does not—and we say this with sincere respect for the judgment of those who participated in the promulgation of the standards—represent the conscience of the law. It is inconsistent with fundamental principles concerning the judge's role, with the maintenance of any standards at all, and lends respectability to practices which no court should allow.

The high regard we all have for the ABA may well lead to uncritical adoption of standards issued under its authority with the result that the minimum standard will become the common standard. This

---

[7] It is recognized that standard 1.8 (see fototnote 8 for full text) covers both charge and sentence concessions. The granting of charge concessions in exchange for guilty pleas has been largely approved by the courts. (See Judge LEVIN's separate opinion in *People* v. *Byrd* (1968), 12 Mich App 186, 194). There is, however, an essential difference between charge and sentence concessions. The former are negotiated with the prosecutor, and the judge's role is essentially passive. The sentencing power, however, is vested in the judge. No meaningful bargaining regarding sentence concessions can take place without at least his tacit approval. Covering both charge and sentence concessions in one standard obscures the difference between bargaining with the prosecutor and bargaining with the judge, a difference recognized by the standards themselves when they state (standard 3.3[a]) that the judge should not participate in the bargaining (see discussion, *infra*, part II), and by the courts (see cases collected in footnotes 3 and 4 and especially quotation above in footnote 3 from Mr. Justice Marshall's dissenting opinion as a United States circuit judge in *United States, ex rel. McGrath,* v. *LaVallee* [CA 2, 1963], 319 F2d 308, 319).

we feel would be most unfortunate, and, accordingly, we address ourselves to what we believe to be a serious threat to well-established principles concerning the use of judicial power.

## II.

ABA Guilty Plea standard 3.3(a) states:

"The trial judge should not participate in plea discussions"

while standard 1.8(a) states:

"It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty".

There is, of course, a difference in degree between overt and covert participation, the former clearly being more inconsistent with the judge's role than the latter.    But the fact that a particular judge grants sentence concessions to guilty pleaders is not the kind of fact likely to be kept secret.   On the contrary, lawyers who properly represent their clients make it their business to learn the sentencing policies of the various judges before whom they appear. Thus, in a very real sense, the judge who adopts a practice of going lighter on guilty pleaders cannot avoid participation in the plea bargaining process. His practices may become so well known that it is unnecessary for him to inject himself in the process overtly, but this hardly means he does not participate.   The judge's sentencing practices are a fact, and they are no less a fact because there is no need to rearticulate that fact upon each arraignment.

Standard 3.3 (b) states that where a "tentative plea agreement has been reached which contemplates entry of a plea of guilty  *  *  *  in the expectation  *  *  *  that sentence concessions will be

granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement", and he may indicate "whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him." It is further provided (standard 3.3[c]) that, notwithstanding the prior plea agreement, the trial judge "should reach an independent decision." And if the trial judge has concurred in the plea agreement (standard 3.3[b]) "but later decides that the final disposition should not include the  *  *  *  sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty".

We are convinced of the impossibility of the judge's avoiding active participation in plea bargaining under the circumstances described by the standard. The length of sentence is the decision of the judge. Prosecutor-defense counsel bargaining over sentence concessions would be an exercise in futility unless the bargainers thought the result of their negotiations would influence the judge. Thus, without at least the judge's tacit approval (*i.e.*, his "participation"), such bargaining would not take place. If the prosecutor is willing to recommend, for example, 5 years, and the defendant is seeking 2-1/2 years, and they settle on 3-1/2 years, they must of necessity in such bargaining consider the judge's attitude.

If the judge permits disclosure to him of the prosecutor-defendant agreement upon sentence (as the quoted ABA standard contemplates), how can he avoid stating the reason for any disagreement with the recommended disposition and, perhaps, indicating what sentence he would agree to consider, at least in those jurisdictions where the administration of

criminal justice has come to depend on a steady
flow of guilty pleas? Indeed, what purpose would
be served by disclosing the arrangement to the judge
if not determination of whether the bargainers are
on the beam? If a meeting of the minds or finaliza-
tion of a previously negotiated agreement follows
the judge's statement of his reaction to the parties'
original proposal, surely the judge has participated
in achieving that result and in the bargaining itself.

If upon full information the judge decides the
proposed sentence is too lenient and (as the stand-
ards suggest) offers the defendant an opportunity
to withdraw his guilty plea, would not the average
defendant carefully consider whether rejection of
the judge's evaluation might lead to a higher sen-
tence should he be convicted following a trial, re-
gardless of whether the particular judge would visit
such punishment upon the defendant? The judge's
decision to reject the original sentence agreement
is, of necessity, based on the judge's evaluation of
both the offender and the charged offense. After
the kind of negotiating and bargaining which pre-
ceded confrontation with the judge, is it not reason-
able to expect many, if not most, offenders would
conclude both fair trial and fair sentencing have
been forfeited?

"Time and again this court has said that justice
must not only be done but must manifestly be seen
to be done." *Rex* v. *Justices of Bodmin* (1947), KB
321, 325.

### III.

ABA guilty plea standard 1.8 needs to be examined
in detail.[8]

---

[8] "1.8 Consideration of plea in final disposition.

(a) It is proper for the court to grant charge and sentence con-
cessions to defendants who enter a plea of guilty or *nolo contendere*
when the interest of the public in the effective administration of

Considerations (i) and (vi) of standard 1.8 are present in every case where the defendant pleads guilty. Every guilty pleader makes his own punishment more certain and, by avoiding trial, expedites disposition of other cases. The net effect of considerations (i) and (vi) is to permit the trial judge to grant a sentence concession in every case where the defendant pleads guilty and, thus, considerations (i) and (vi) effectively cancel everything else in subparagraph (a) of standard 1.8. It would have been clearer simply to have said that sentence concessions may be granted to all guilty pleaders.

Consideration (ii), allowing sentence concessions to guilty pleaders on the ground "defendant has acknowledged his guilt and shown a willingness to assume responsibility for his conduct",[9] also applies in

---

criminal justice would thereby be served. Among the considerations which are appropriate in determining this question are:

(i) that the defendant by his plea has aided in ensuring the prompt and certain application of correctional measures to him;

(ii) that the defendant has acknowledged his guilt and shown a willingness to assume responsibility for his conduct;

(iii) that the concessions will make possible alternative correctional measures which are better adapted to achieving rehabilitative, protective, deterrent or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;

(iv) that the defendant has made public trial unnecessary when there are good reasons for not having the case dealt with in a public trial;

(v) that the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct;

(vi) that the defendant by his plea has aided in avoiding delay (including delay due to crowded dockets) in the disposition of other cases and thereby has increased the probability of prompt and certain application of correctional measures to other offenders.

(b) The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the rehabilitative, protective, deterrent or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove his guilt at trial rather than to enter a plea of guilty or *nolo contendere*."

9 Along the same line, the award of sentence concessions has been defended on the ground that the defendant who pleads guilty has thereby avoided perjuring himself at trial, and, conversely, that it is appropriate to impose harsher sentences on those who testify and

every case, if it applies in any case.  If the defendant acknowledges his guilt in the expectation of a sentence concession, he is as likely to be trying to put himself in line for a sentence concession as to be truly repentant.  Those who think "confession is good for the soul", that acknowledgment of guilt and repentance is an important step on the road to rehabilitation, should be in the forefront of opposition to plea bargaining in any form, because only elimination of all concessions will remove the temptations which contaminate the moral surge of those truly repentant.  Only then could we distinguish the truly repentant from those merely bargaining in the marketplace.  Repentance and purchase are not coextensive concepts.  The plea bargaining apologists themselves tell us that without the element of purchase there would be far fewer guilty pleas.  A palpable inconsistency exists between the pragmatic basis of plea bargaining, the need to obtain guilty pleas, and the beatification of the guilty pleader.

And while we are focusing on remorse, it appears that the bargaining system may create as much recriminatory remorse as penitent remorse.  If a defendant pleads guilty in the expectation of a sentence lighter than the one he in fact receives, he may well

are nevertheless convicted by a jury because the jury verdict establishes that they have perjured themselves.  (See authorities and discussion in commentary accompanying ABA guilty plea standards, pp 43, 44).  However, even if the defendant has testified and even if the jury's verdict might be read as a determinaton that the defendant perjured himself in denying guilt, the judge may not properly punish for that offense until the defendant has been informed against, tried and convicted of that offense, and, conversely, the trial judge may not on that basis properly award to those who waive trial sentence concessions denied those who stand trial on the assumption that had they stood trial they would have testified falsely.  See *Baker* v. *State* (1968), 3 Md App 251, (238 A2d 561, 566) (The trial judge may not consider defendant's possible involvement in another crime for which he was neither charged nor convicted: "That a just sentence based on proper considerations is an essential element of a fair trial cannot be questioned".)

be left with feelings of both regret and having been
cheated, feelings which, whether completely justi-
fied or not, are bound to occur in particular cases
as long as defendants are encouraged to believe it is
to their advantage to plead guilty. Plea bargaining
may then produce at least as much negative as posi-
tive remorse and may retard as well as promote re-
habilitation.

The ABA standard also asserts (consideration
[iii]) that concessions may be granted if they "will
make possible alternative correctional measures
which are better adapted to achieving rehabilita-
tive, protective, deterrent or other purposes of cor-
rectional treatment, or will prevent undue harm to
the defendant from the form of conviction." It is
unclear whether that consideration is intended to
have application to *sentence* concessions or whether
it relates only to charge reduction concessions. In
any event, such "better adapted" corrective measures
could be achieved without exacting the plea in ex-
change for the concession—the charge or sentence
could be reduced without regard to whether the de-
fendant pleads guilty. It is not proper for a judge
to deny correctional measures "better adapted to
achieving rehabilitation, *et cetera*" merely because
one has exercised his right to stand trial. Are those
misguided souls who exercise constitutional rights
less in need of such alternative correctional measures
than those who waive them? On the contrary, it
would seem those who perversely insist upon exercis-
ing constitutional rights have at least as great a need
of "better adapted" correctional measures as the
truly repentant who waive them.

Standard 1.8(b) concludes:[10]

---

[10] Considerations (iv) and (v) are atypical and, therefore, do not
support a system of plea bargaining in general. As to consideration
(iv), saving the complaining witness the embarrassment of a trial, see
*Letters* v. *Commonwealth, supra,* 404, 405 (193 NE 578, 580). (In a

"The court should not impose upon a defendant any sentence in excess of that which would be justified by any of the rehabilitative, protective, deterrent or other purposes of the criminal law because the defendant has chosen to require the prosecution to prove his guilt at trial rather than to enter a plea of guilty."

It seems then that the court may impose a lesser sentence than would be justified by any of those considerations upon a defendant who pleads guilty. Defenders of plea bargaining cannot have it both ways. Guilty pleaders cannot receive lighter sentences unless those convicted upon trial receive heavier sentences—disparity there must be. Any such disparity is nothing less than a judicially imposed penalty[11] for the exercise of constitutional rights, however it is dressed and garnished, or however exalted and respected may be the *imprimatur* of the authority that defends it.

## IV.

The sentencing power of the trial judge is enormous. If within the statutory range, the sentence generally is regarded as unreviewable on appeal,

rape case trial judge said he would impose consecutive life sentences "if it became necessary for the complainant to take the stand." Defendant pled to a reduced charge. In reversing, the appellate court said: "In view  *  *  *  of what is at stake for the defendant it would appear difficult to conclude that a decision not to plead guilty  *  *  *  is a significant reflection of character. The circumstances, if entertainable at all, would be relevant at the time for sentencing and not before. But, plainly, a defendant, whatever his character, may not be punished for exercising his right to trial and, therefore, the fact that he has done so should be given no weight in determining his sentence.")

As to consideraton (v), a defendant who turns State's evidence, see Mr. Chief Justice Warren's dissent in *United States* v. *Hoffa* (1966), 385 US 293, 313 (87 S Ct 408, 17 L Ed 2d 374), rehearing denied 386 US 940, (87 S Ct 970, 17 L Ed 2d 880), stating the use of informers is proper in some circumstances but was improper in *Hoffa*.

[11] See Note, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale L J 204 (1956).

even if the defendant asserts and proves that the trial judge abused the discretion confided to him.[12] A trial judge should not be permitted to use that awesome power to accomplish a waiver of fundamental guaranteed rights. One exercising a guar-

---

[12] The appellate courts of Michigan have denied themselves the power to review sentences unless the sentence imposed exceeds the statutory maximum. *People* v. *Krum* (1965), 374 Mich 356, 362; *People* v. *Connor* (1957), 348 Mich 456, 463; *In re Doelle* (1948), 323 Mich 241, 245; *In re DeMeerleer* (1948), 323 Mich 287, 289; *People* v. *Harwood* (1938) 286 Mich 96, 98; *Cummins* v. *People* (1879), 42 Mich 142, 144; *People* v. *Pate* (1965), 2 Mich App 66, 68; *People* v. *Tetts* (1967), 6 Mich App 254, 259.

It was not always thus. In *People* v. *Murray* (1888), 72 Mich 10, at a time when Michigan did not have an indeterminate sentence law and the defendant was required to serve whatever sentence was imposed unless pardoned, the defendant had been sentenced to 50 years in prison for statutory rape. The Supreme Court stated the sentence should not have exceeded 25 years, holding the trial judge had abused the discretion vested in him by the statute (pp 16, 17): "the sentence imposed * * * is for 50 years, and will very likely reach beyond the natural life of the respondent * * * . We see nothing in this record warranting any such sentence, and it must be regarded as excessive. *It will not do to say the executive may apply the remedy in such a case. We do not know what the executive may do, and it is but a poor commentary upon the judiciary when it becomes necessary for the executive to regulate the humanity of the bench.*

"But the Constitution has not left the liberty of the citizen of any state entirely to the indiscretion or caprice of its judiciary, but enjoins upon all that unusual punishments shall not be inflicted. * * *

"We are all of opinion that the present case shows an abuse of the discretion vested by the statute in the circuit judge in this respect." (Emphasis supplied.)

The ABA has also adopted Standards Relating to Appellate Review of Sentence (February, 1968). These provide that "judicial review should be available for all sentences imposed in cases where provision is made for review of the conviction." The accompanying commentary states, "Review of the merits of a sentence has actually been undertaken by an appellate court in only 21 States. The number in which review is realistically available in every serious case is much lower, something on the order of 15." (p 13)

Those States providing for review do so either by statute or, in a few States, by reassertion of the court's inherent judicial power. In those jurisdictions where appellate review exists, there is at least some opportunity for appellate courts to control sentence concessions negotiated under a plea bargaining system. But in jurisdictions not allowing for sentence review the practices of a bargaining system, except in the rarest case, will be obscured from appellate standards. Thus the ABA Appellate Review of Sentence proposals make somewhat more tolerable, in theory at least, the essentially regressive plea bargaining rationale of guilty plea standard 1.8.

anteed right should not fear he may have to pay a price for doing so.[13]  He should not have to fear that if he demands a trial and is convicted his sentence will be higher than if he had waived his constitutional rights.  A constitutional right may not be the subject of barter.  Neither, in our view, should the exercise of judicial discretion.

"To no one will we sell, to no one deny or delay right or justice."  Magna Carta, Art 40.[14]

Whatever one may think of plea bargaining for charge reductions between prosecutor and defendant,[15] we have not, in tailoring justice to the realities of the docket and prosecutorial and judicial manpower,[16] authorized the trial judge himself to exert any pressure on the defendant to plead guilty.  We

---

13 See *United States* v. *Jackson* (1968), 390 US 570 (88 S Ct 1209, 20 L Ed 2d 138); *Spevack* v. *Klein* (1967), 385 US 511 (87 S Ct 625, 17 L Ed 2d 574); *Garrity* v. *New Jersey* (1967), 385 US 493 (87 S Ct 616, 17 L Ed 2d 562).

14 "Liberty and freedom partake more of the nature of articles of faith than articles of commerce." *People* v. *Robinson* (1955), 344 Mich 353, 361, by Mr. Justice TALBOT SMITH, dissenting on an issue not dealt with in the majority opinion.

15 See *People* v. *Byrd* (1968), 12 Mich App 186, for a statement of Judge LEVIN's views on plea bargaining with the prosecutor over charge reductions. See, also, *People* v. *Hollman* (1968), 12 Mich App 231.

16 The problem is not solely indigenous to Michigan, as shown by a recent article, City Courts Facing a Growing Crisis, The New York Times, February 12, 1968, p 41:

"Every few minutes the assembly-line in the city's awesomely overloaded criminal court system lurches forward to produce a new defendant in an atmosphere of thinly masked impatience.

"He is like a factory product—'like a can of peas being processed,' says an important criminal lawyer—to be labelled, handled briefly, then moved on, and often forgotten.

"The heavy volume forces such rapid handling—a dismissal, a guilty plea or an adjournment for a later hearing that everyone is under pressure to get out of the way for the next case.  *  *  *

" 'Instant justice' is the way Justice Bernard Botein, presiding judge of the appellate division for Manhattan and the Bronx, describes the criminal court process. 'We're holding it together with Scotch tape and wire because of lack of manpower—lack of judges and court personnel,' he explains."

hope we never shall, whatever may be the backlog of untried cases.[17]

The remedy for the backlog is not more pressure on prosecutors and defendants to strike deals, but increased public awareness of the need to provide

[17] In *O'Hara* v. *People* (1879), 41 Mich 623, 624, the defendant was convicted by a jury, and then: "Some very extraordinary proceedings followed. The defendant was given by the judge to understand that he must submit to a severe sentence or else withdraw his plea of not guilty, enter a plea of guilty and immediately pay $400 and estop himself from bringing error. He accepted the last alternative and went through the form of withdrawing the plea on which he had been tried and convicted, and of pleading guilty, and paid in the $400.

"The attorney general very naturally declines to offer anything in defense of these proceedings. * * *

"The great impropriety of the later proceedings referred to is too manifest to justify extended comment.

"When a convicted person is brought up for sentence he has rights still, and it is specially incumbent on the judge to take care that they are fully observed and protected. No sort of pressure can be permitted to bring the party to forego any right or advantage however slight. *The law will not suffer the least weight to be put in the scale against him, and any attempt cannot fail to be reprobated. Standing at the bar to receive judgment the law surrounds him with its protecting principles and intends that his sentence shall be the reflection of its justice and as far as possible free from all taint of human frailty."* (Emphasis supplied.)

The later case of *People* v. *Brown* (1884), 54 Mich 15, cannot be read as an approval of the general practice of granting sentence concessions to those who plead guilty and imposing harsher treatment on those who do not. In *People* v. *Brown,* the Court found the defendant was not misled by the trial judge and reaffirmed its view that it is improper to induce pleas by promises or threats regarding the sentence to be imposed. The trial judge had been greatly importuned by many people. He acknowledged he had told the defendant if he (p 21): "should plead guilty, I should view his case as one meriting less punishment than I should feel disposed to impose should he be convicted after a trial by jury." The Supreme Court stated (p 29):

"The most that can be fairly imputed to the judge is an excess of patience in listening to the importunities. It was a natural consequence that he should on one occasion have been imprudent enough to intimate a purpose to impose a lighter sentence in case of conviction on plea of guilty than upon conviction by a jury. The importunities drew out from him that much; and it may be assumed that it possibly had some effect upon respondent's mind.

"Had an intimation of the sort been made by way of *threat,* and a plea of guilty been secured thereby, the judgment upon the plea ought to be set aside. *O'Hara* v. *People,* 41 Mich 623. And even though not given by way of threat, had a sentence of great severity followed, it might have been apparent that the defendant had been wronged." (Emphasis supplied.)

adequate funds so there are enough assistant prose-
cutors and judges to try those whom the prosecutor
believes guilty for the offenses he charges have
been committed. The trenchant comments of a unan-
imous Court in *R. R. Improvement Association* v.
*Thomas* (1965), 374 Mich 175, 187, are in point:

"Our metropolitan circuits being burdened as they
are, it is better to let the work of the circuit get
farther and farther behind than to crank a judicial
meatgrinder the unjust output of which is simply
a great number of 'cases disposed of.' When such a
choice—between contemplative and prompt justice
on the one hand and assembly line justice on the
other—must be made, it [the Court] is due for bitter
criticism either way. But cases tried right, and then
thoughtfully decided, amount of a certainty to better
judicial service than that which is manifested in this
and too many like appendices coming here."

As things stand now, the experienced criminal
assumes he can make a deal for a lesser charge than
the one alleged in the prosecutor's information.
More likely than not, he can. Such a state of affairs
will hardly inculcate respect for law and order. Par-
ticipation by trial judges in the negotiating process
would, no doubt, speed it up, but the public's and pro-
fession's esteem for the judiciary is bound to be
diminished.

We should not take the next step backward and
permit judges to enter the bargaining process. That
is what appears on the record before us, and a new
trial is ordered.

## V.

The defendant could reasonably understand the
trial judge was saying he was a busy man with a
long memory and those who run the gauntlet unsuc-
cessfully will be dealt with more severely than those

who plead guilty. Might not a defendant or his
counsel reasonably conclude that if a penalty will be
imposed on those who vex the court by delay in
pleading guilty, those who stand trial and are con-
victed may expect at least similar and perhaps more
severe treatment? This seems an entirely reason-
able construction. Had we been in the courtroom,
this is the message that would have come through
to us. Surely the defendant should not be faulted
for failing to interpret the judge's remarks to mean
that while those who delayed in pleading guilty, but
ultimately did so, would be dealt with more harshly
than those who pleaded guilty at the time of the
criminal calendar call, those convicted by a jury after
a possibly lengthy trial would be sentenced as if
they had pled guilty at the criminal calendar call.

There is, of course, no way of knowing what in-
fluenced the defendant here to plead guilty.[18] Most
defendants who plead guilty are guilty and have been
offered an opportunity to plead to an offense with a
lower maximum sentence than the offense originally
charged and in fact committed. Perhaps so in this
case.[19]

Where a defendant claims a promise or threat
was made and this is denied, there must be a testi-
monial hearing to determine the truth of the claim.
In this case the promise-threat appears on the rec-

[18] Compare Bram v. United States (1897), 168 US 532, 543, 565
(18 S Ct 183, 42 L Ed 568); People v. Wolcott (1883), 51 Mich
612, 615.

[19] The defendant Earegood described his acts of participation in the
crime before the judge accepted his plea of guilty to the reduced
offense (see footnote 2, supra). Those statements may have been
entirely accurate; on the other hand, they may have been made in order
to justify the trial judge in accepting the plea. See footnote 20,
infra, and discussion in People v. Byrd, ante, part IV. See, also,
People v. Zaleski (1965), 375 Mich 71, 83; Kercheval v. United States
(1927), 274 US 220, 223 (47 S Ct 582, 71 L Ed 1009); Williams v.
Kaiser (1944), 323 US 471, 475 (65 S Ct 363, 89 L Ed 398); Rogers
v. Richmond (1961), 365 US 534, 544 (81 S Ct 735, 5 L Ed 2d 760).
But see People v. Dunn (1968), 380 Mich 693.

ord.  A hearing on whether the defendant was "influenced" by the promise-threat would be unproductive.  The defendant cannot constitutionally be required to submit to questioning and his attorney's lips are sealed.  Any admissions made during the bargaining process with the prosecutor or during the examination by the judge at the time he accepted the plea could be explained away as having been offered to justify the prosecutor in recommending acceptance of the negotiated plea and the judge in accepting it.[20]  A hearing to determine if the judge's remarks influenced the defendant to plead guilty would present a much more difficult factual question than that presented by a trial of defendant's guilt on the original charge.

We hold that, once established, the promise-threat will ordinarily be presumed to have influenced the defendant.[21]  Any other approach would be impractical.  We should not spend a great amount of time trying an extraneous issue when in nearly the same time we could try the real issue, the defendant's guilt.

## VI.

The view that sentence concessions should be awarded guilty pleaders is entertained, if·not expressed with the candor that appears on this record, by many trial judges (see footnote 5), all of which is known to practitioners and prosecutors and soon becomes known to defendants and the public at large. That view is so widely held that many assume a judge will go harder on a defendant who is convicted fol-

---

[20] Unless the defendant is willing to admit guilt to the lesser offense to which he is offered the opportunity to plead guilty, he will not be allowed to do so.  *People* v. *Barrows* (1959), 358 Mich 267. See, also, additional cases collected in *People* v. *Byrd, ante,* footnote 23.

[21] *Harrison* v. *United States* (1968) 392 US 219 (88 S Ct 2008, 2011, 2012; 20 L Ed 2d 1047, 1053).

lowing trial.[22] Thus, there is an implicit promise-threat in every case, which will not be removed unless, and until, the judiciary convincingly make it known that trial judges will not deal more harshly with a defendant who is convicted following a trial than one who pleads guilty, and all become convinced that is true.

It could be argued that since the promise-threat is implicit in every case, we should grant relief in no case, even this one where the promise-threat appears on the record. We are not willing so to admit judicial impotence to correct unsound practice. That we do not do more is a poor reason for doing less.

Our disposition of this case makes it unnecessary for us to consider defendant's claims that he was not credited with jail time on his sentence and that the trial court failed to certify the stenographic record of proceedings as required by GCR 1963, 785.3(3).

The conviction and plea are hereby set aside and the cause remanded for trial.

T. G. KAVANAGH, J., concurred with LEVIN, J.

QUINN, P. J., (*dissenting*). What is said here in no way condones the remarks of the trial judge at the call of the criminal calendar October 12, 1965, as quoted at the beginning of the majority opinion. The remarks were improper and injudicious, but on this record, they do not support the reasoning or the result of the majority opinion.

As noted in that opinion, the remarks were directed to all in the court room on October 12, 1965. Five weeks later and after an amended information

---

22 "Even when there have been no explicit negotiations, defendants relying on prevailing practices often act on the justifiable assumption that those who plead guilty will be sentenced more leniently." The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts (1967), p 9.

charging a lesser offense was filed, defendant pleaded guilty to such lesser offense and recited on the record facts establishing the offense and his participation in it. At the same time, defendant stated he was pleading guilty freely and voluntarily and that no threats or promises had been made to induce the plea.

I agree with the majority opinion that to lengthen a sentence because of a late plea of guilty is improper. If the record established this to be the fact here, I would vacate sentence and remand for resentencing. The record does not establish the fact, and the majority opinion only does so by assumption. I cannot make that assumption in view of the fact that all judicial proceedings in courts of general jurisdiction are presumed to be correct and regular, in the absence of proof to the contrary. 1 Wharton Criminal Evidence (12th ed), § 126, p 233. In addition, as was said in *In re Valle* (1961), 364 Mich 471, 478:

"The oath of public officials as to the performance of their sworn duties is, it has been our experience, so consistently in accord with the fact of such performance that only in the most unusual circumstances would we be persuaded otherwise."

The record does not support the claim of defendant that the remarks of the judge influenced defendant's plea. In fact, defendant's answers to judicial interrogation at the time of plea negate such a claim. In view of defendant's positive assertion at time of plea that he pleaded freely and voluntarily without being influenced by threat or promise, I am unable to accept his present belated and self-serving argument that he was influenced by the implied threat in the remarks of the trial judge hereinbefore referred to as proof overcoming what is disclosed by the record at time of plea.

As stated in *People* v. *Winegar* (1968), 380 Mich 719, a convicted defendant no longer enjoys the presumption of innocence. On appeal from conviction, defendant has the burden of establishing reversible error, absent a showing of violation or denial of constitutional rights, and reversible error is to be measured by the standards established by statute, CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096) and rule, GCR 1963, 529.1. (*Winegar, supra*). This defendant has failed to do.

I vote to affirm and such vote indicates my belief that the other points asserted by defendant on this appeal are without merit.