(No. 39088.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM DARRAH, Plaintiff in Error.

*Opinion filed September 28, 1965.*

JOHN R. SNIVELY, of Rockford, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and RICHARD STENGEL, State's Attorney, of Rock Island, (FRED G. LEACH, Assistant Attorney General, and PETER C. FIEWEGER, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The grand jury of Rock Island County returned an indictment which charged Jack Duncan and William Darrah, (hereafter defendant) with burglary. A motion to quash the indictment was overruled, and both defendants pleaded not guilty. On April 16, 1962, the case came on for trial. Duncan waived a trial by jury, and his case was continued for trial before the court. The defendant's trial was commenced, a jury was selected and evidence was offered by the prosecution on April 16. The prosecution concluded its case on April 17, and on that date the defendant's motion for a directed verdict was overruled and evidence was offered in his behalf. On April 18 the defendant's case was completed and the prosecution adduced evidence in rebuttal. At the close of all of the evidence the defendant withdrew his plea of not guilty, signed a written waiver of jury trial and tendered his plea of guilty. The plea was accepted, and the defendant was subsequently sentenced to the penitentiary for a term of not less than seven nor more than fifteen years.

Of the several contentions which the defendant advances on this writ of error, we shall consider first that which relates to the circumstances under which the defendant withdrew his plea of not guilty and entered a plea of guilty. He contends that these circumstances establish that his plea was not voluntarily made, but was coerced.

The record shows that when the defendant's attorney

announced that "we withdraw our jury demand and enter a plea of guilty" to the indictment, the trial judge directed the State's Attorney to state "what this charge is." The State's Attorney then described the offense charged, and stated that clothing and other items worth between $12,000 and $15,000 "were taken from the store and placed in Darrah's car" which was parked in an adjacent alley. He also stated that it was his understanding that Duncan would appear and plead guilty on the following day.

The record continues:

"The Court: Do you want to tell us what you have advised the defendant as to his rights?

Mr. Winstein [defendant's attorney]: Well, Judge, I think he has been fully advised that he did have a right to trial by jury, the production of witnesses, to force the State to prove him guilty by the production of witnesses, that he himself had the right to be confronted by those witnesses, and to produce witnesses in his own behalf. I have also advised him as to the possible consequences of his plea of guilty.

The Court: What did you tell him in that connection?

Mr. Winstein: Under the new statute, anything in excess of a year, an indeterminate sentence, from one to something.

The Court: For example, what?

Mr. Winstein: Anything but life. Could have been 1 to 99 years, I would think.

The Court: Or possibly seven to fifteen?

Mr. Winstein: Or possibly seven to fifteen.

\* \* \*

The Court: Now, Mr. Darrah, you have heard what the State's Attorney has said about your offense, as well as the testimony of the witnesses that have been produced here in this Court up until the present time, you have heard what your attorney has told you about your rights in this case, and you have been cautioned as to the consequences of your

plea. Do you still persist in your plea of guilty at this time?

Defendant Darrah: Yes, sir.

The Court: You understand this Court, by virtue of your plea of guilty, has the right to impose sentence as suggested by your attorney from 1 to 99 years, 7 to 15, or such similar sentence. Is that right?

Defendant Darrah: Yes, sir.

The Court: And you still persist in your plea of guilty, is that correct?

Defendant Darrah: Yes, sir.

The Court: Do you do it freely and voluntarily, without any threats or coercion or promises of any kind?

Defendant Darrah: Yes, sir."

The court then accepted the plea of guilty and continued the case for sentencing.

When the matter came on for the imposition of sentence, the trial judge asked the State's Attorney if he had anything to say. He replied: "It is the recommendation of the State's Attorney that he be sentenced not less than seven, nor more than fifteen years. I believe the Court has all of the facts involved in that case. The record shows that he was convicted in Missouri in 1954 for burglary and sentenced one to three, and was convicted in the federal court in Kansas City for interstate transportation of firearms after a previous conviction and got two years, of which 23 months were suspended at that time. Since the burglary here, it is my understanding there are charges pending against the defendant in Ottawa, La Salle County, and also one in Cook County."

The record continues:

"The Court: Have you anything to say?

Mr. Winstein: No, I think everything has been said after the two and a half days we endured here.

The Court: Have you anything to say, Mr. Darrah?

Defendant Darrah: No.

The Court: I don't presume there is any purpose in my

preaching to you to reform because I am satisfied you are a professional burglar.

Defendant Darrah: Not too professional, your Honor.

The Court: Well, that is about what I was going to say. Of course, we don't know how many burglaries you were successful in, but the fact you were convicted in Missouri, and since you got out on bond here you have been arrested for the same offenses apparently in La Salle and Cook Counties, sort of indicates your technique is not really professional. A little bit clumsy, I would say, Your co-defendant Duncan also testified at your trial. I don't know how the jury reacted, but it seemed to me your stories were a little ridiculous. At least there were a number of contradictions. I suppose both of you were guilty of perjury in addition to burglary. It may be you suborned Duncan's perjury, so that your ability in that field wasn't too professional either. As I indicated to your attorney, if you had been convicted by a jury, your sentence would have been considerably greater.

Defendant Darrah: Ten to forty.

The Court: That's right. I don't think your attitude of remorse or your attitude generally toward courts or officers of the law is anything commendable. Nevertheless, as long as you plead guilty with a sort of an understanding that your sentence would be seven to fifteen, I am inclined to adhere to the State's Attorney's recommendation, and it is the judgment and sentence of this Court that you, William Darrah, be imprisoned in the Illinois State Penitentiary not less than seven, nor more than fifteen years. You will be remanded to the County Jail for transportation.

Defendant Darrah: Yes, sir."

It is the defendant's position that his plea of guilty resulted from pressures that stemmed from fear that if he adhered to his constitutional right to continue with the trial and was found guilty he would face a sentence of ten to forty years, and from hope that if he pleaded guilty he would receive a substantially lower sentence. The effect of

these pressures, he contends, was to make his plea the product of coercion, rather than a voluntary acknowledgement of guilt. In support of this contention he relies upon *Waley* v. *Johnston,* 316 U.S. 101, 86 L. ed. 1302; *Euziere* v. *United States* (10th cir.) 249 F.2d 293; *United States* v. *Tateo* (S.D.N.Y.) 214 F. Supp. 560; *O'Hara* v. *People,* 41 Mich. 623, 3 N.W. 161; *People* v. *Guariglia,* 303 N.Y. 338, 102 N.E.2d 580; *People* v. *Farina,* 2 N.Y.2d 454, 141 N.E.2d 589, and *Flowers* v. *State,* 90 Okla. Cr. 390, 214 P.2d 728.

These cases illustrate some of the problems that may result from a "negotiated" plea—a plea of guilty to a lesser offense entered by agreement with the prosecution, for example, or one entered after an understanding has been reached as to the sentence that the prosecution will recommend. These and other problems could be eliminated by a rule that would prohibit any differentiation between a sentence imposed after a plea of guilty and one imposed after trial. Such a rule, however, would invite speculation without risk upon the mischances of a trial. As stated by Professor A. R. N. Cross, "If a plea of guilty were not, at least on occasions, to affect sentence, it is difficult to see why the professional criminal should ever plead guilty." (Cross, Paradoxes in Prison Sentences, Clarendon Press, Oxford 1965.) Moreover such a rule would require a sentencing judge to ignore in every case the defendant's knowledge of his own guilt, however clearly that knowledge might have been established, and to disregard the assumed psychological effect of an acknowledgment of guilt as an important step in the process of reformation. In the present state of our knowledge of human psychology it is at least doubtful that judges should be required, in every case, to disregard that assumption when imposing sentence.

But the possible mischances of a trial do not operate only against the prosecution, and a great disparity between the sentence to be imposed upon a plea of guilty and that to

be imposed after a trial, combined with other circumstances unrelated to guilt or innocence, may cause innocent persons to plead guilty. It may be, as has been suggested, that the judge should not take part in negotiations that result in a guilty plea. "Perhaps, in order to avoid a later claim of coercion and consequent denial of due process, a judge would be wiser to abstain from any conversation about a guilty plea with a criminal defendant awaiting trial before him— even when, as here, the judge is acting in what he soundly considers the defendant's best interest and in line with the recommendations of experienced defense counsel, and the result of abstention is likely to be a heavier sentence for the defendant whose rights the due process clause aims to protect. However, no one claims that such a conversation is a *per se* denial of due process; decision turns upon what was said and its probable effect." (Friendly, J., concurring and dissenting, *United States ex rel. McGrath* v. *LaVallee* (2d cir.) 319 F.2d 308, 315.) A comment entitled, Official Inducements to Plead Guilty: Suggested Morals For a Marketplace, 32 U. Chi. L. Rev. 167, 187, goes further, and after analyzing the problem concludes that "* * * the mere presence of judicial inducement to plead guilty should require reversal." But where, as in this case, the sentencing judge is authorized to fix, within broad limits, the minimum and maximum periods of imprisonment, judicial participation increases the accuracy of the information available to the defendant when he makes his decision.

The record before us does not provide the materials necessary for the solution of these problems in this case. It shows that before the defendant made his decision to plead guilty, he had had the benefit of a trial, complete except for arguments to the jury, instructions and verdict. He had put the prosecution to its proof, and he and his attorney were in a position to appraise the full impact of the case against him. It shows also that there had been a discussion between the defendant's attorney and the judge at

which the judge indicated that a "considerably greater" sentence would have been imposed if the defendant had been convicted by the jury, but it does not establish whether that discussion took place before or after the defendant had entered his plea of guilty. We do not regard the judge's acquiescence in the defendant's interpolation as establishing ten to forty years imprisonment as the exact alternative with which the defendant was confronted. There is no indication in this record that the discussion as to different sentences initiated with the judge, rather than the defendant, as was the situation in many of the cases in which pleas of guilty have been set aside or seriously challenged. (See, *e.g., Letters* v. *Commonwealth,* 346 Mass. 403, 193 N.E.2d 578; *Euziere* v. *United States,* (10th cir.) 249 F.2d 293; *United States ex rel. McGrath* v. *LaVallee,* (2d cir.) 319 F.2d 308.) Finally, in the case before us the defendant was apparently eligible for prosecution as an habitual criminal, and so for a sentence substantially longer than would probably otherwise have been imposed. Decision to invoke the provisions of the Habitual Criminal Act rested with the prosecutor (Ill. Rev. Stat. 1961, chap. 38, par. 603.3,) and the record is silent as to his intentions and as to the part, if any, that those intentions played in any discussion concerning sentence differentials. The record before us does not establish that the defendant's plea of guilty was the result of coercion.

The defendant also argues that because the procedural requirements of the Habitual Criminal Act were not complied with, it was error for the trial judge to take note of his prior criminal record in imposing sentence. This argument assumes that, under the statute then in effect, unless a defendant was proceeded against as an habitual criminal, his past record could not be brought to the attention of the sentencing judge. This is an incorrect interpretation of the statutory scheme, which contemplated a hearing in aggravation and mitigation in connection with the imposition of sentence, even though the Habitual Criminal Act was not

invoked. (Ill. Rev. Stat. 1961, chap. 38, par. 732.) The defendant made no objection to the method by which his previous convictions were brought to the attention of the trial judge, and he did not deny them. See *People* v. *Wakeland,* 15 Ill.2d 265; *People* v. *Rummerfield,* 4 Ill.2d 29.

The defendant's contention that he was not advised of his right to a trial by jury and of "his right to continue with the trial to a conclusion" seems to rest upon the fact that the trial judge did not, when the defendant changed his plea, specifically mention those rights. The contention is specious, for the defendant had been on trial before a jury for three days, and all of the evidence was in. If specific admonition be thought necessary to negative the possibility that the defendant assumed that the trial had been an empty exercise, devoid of significance, it is found in his attorney's statement that the defendant had been fully advised of his right "to force the State to prove him guilty." The further contention that "the record fails to disclose that the defendant understood the nature of the charge against him, and the consequences thereof if found guilty, and understood that he had a right to counsel," is too frivolous to warrant discussion.

The indictment charged that on November 29, 1961, within the county of Rock Island, Illinois, the defendant and Duncan broke and entered "the building, to-wit: store building, of John A. Gustafson, doing business as Gustafson's Clothiers." The defendant contends the indictment is fatally defective because it fails to give the street address or a more particular description of the burglarized building. We do not reach this issue because the defendant's plea of guilty waived all defects in the indictment which were not jurisdictional, and an inadequate description of a particular location within a county is not a jurisdictional defect. *People* v. *Jackson,* 23 Ill.2d 475.

In our opinion the sentence imposed was not excessive, and the judgment of the circuit court of Rock Island County is affirmed.

*Judgment affirmed.*