THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY CURL, Defendant-Appellant.

(No. 11263; )

Fourth District—May 13, 1971.

CRAVEN, J., concurring in part and dissenting in part.

Kenneth L. Strong, of Pontiac, for appellants.

John G. Satter, Jr., State's Attorney, of Pontiac, for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

A jury found defendant guilty of armed robbery. The trial court denied his petition for probation and imposed sentence of three to ten years. Defendant appeals the conviction and sentence.

It is urged that the court erred in denying defendant's motion to suppress evidence, *i.e.*, the victim's identification of the defendant, and defendant asserts issues of whether defendant was represented by counsel at all stages of the proceeding, and whether there was an abuse of discretion in denying probation and in imposing the excessive sentence.

The brief and argument do not directly attack the sufficiency of the evidence establishing guilt. In brief, a service station at Dwight was robbed in the early morning hours on March 18, 1969. Defendant together with one, Geary, and a girl, were apprehended at about 6:00 A.M. following a long high-speed chase by the State Police. Through police communications various officers had been advised of the robbery and of the make and style of automobile. As an officer attempted to stop a car of such description the vehicle, which was admittedly driven by defendant, sought to escape. When defendant's vehicle failed, he and his companions undertook to flee on foot. Defendant was taken into custody after a considerable search of an adjacent field. Geary, who had pleaded guilty and was awaiting sentence, and the girl companion each testified that defendant participated in the robbery. Seabert, the attendant threatened with a gun, identified defendant as the driver of the vehicle who stopped at the station and requested two dollars worth of gasoline. As Seabert finished at the pump and approached for payment, he faced Geary in the back seat holding a gun. Defendant and Geary accompanied Seabert into the station where they took some sixty-three dollars from the cash register. Several officers testified to the attempt to investigate the car, the pursuit and apprehension and of finding some sixty dollars and a wig at the place where defendant's automobile was abandoned. Defendant testified and admitted spending the evening with Geary and the girl, and driving the car. He denied being in Dwight or participating in the robbery. He explained the strenuous efforts to escape by stating that he had been drinking and did not have a current driver's license and that he feared that he would be arrested.

Defendant first argues that in-court identification by Seabert was improper because defendant did not have an attorney present at the time of such initial identification at the jail by the victim, and that such identification was made without a line-up. The defendant was brought to the jail at about 7:00 A.M. and a few minutes later Seabert and his employer entered. The defendant and Geary were seated in a portion of a public room in the police station with several officers. The evidence is

that Seabert immediately identified Geary by saying that he looked like the man who robbed him but that the latter's hair was longer. As requested, defendant put on the wig in evidence and the identification was affirmed instantaneously.

So far as the record shows, the matter was in the investigatory stage, the victim had not been interviewed by officers to obtain a description of the robbers, and the defendant had not been charged with the offense of armed robbery. For police purposes there was only knowledge of a spectacular ride in pursuit of a car fitting the general description of that of the robbers.

Defendant relies upon *United States v. Wade*, 18 L.E.2d 1149, 388 U.S. 218; *Simmons v. United States*, 19 L.Ed.2d 1247, 390 U.S. 377 and *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152. *Wade* says that there is no *per se* exclusion of the in-court identification made without counsel or without line-up, but that the court must determine whether such in-court identification was based upon observation with origin independent of the pre-trial view. (See also *People v. Martin*, 47 Ill.2d 331, 265 N.E.2d 685, and *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330.) The test stated in *Simmons* is whether the pretrial view is:

"* * * so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-identification."

In *Wade* and *Blumenshine*, the judgment of the trial court was vacated and the cause remanded for further hearing because the reviewing court could not reach "an informed opinion" from the record, as to whether the in-court identification was independent of the pre-trial identification viewing.

In this case a hearing was had upon defendant's motion to suppress and it appears that he introduced such evidence as he wished. Other parts of the record supply additional evidence so that the issue can be reviewed here. *People v. Martin*, 47 Ill.2d 331, 265 N.E.2d 685, and *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330.

We have considered the evidence upon the opportunity of the witness to observe defendant, the approximate duration of such observation and the lighting conditions, the lapse of time between the robbery and the viewing, and the presence or absence of suggestive police influence. *Simmons v. United States; United States v. Wade; People v. Perry* and *People v. Martin.*

■■■ The record shows that the filling station area and the station itself was brightly lighted with fluorescent lights, that Seabert observed the defendant seated in the car as he filled the tank, and again as he was marched under the gun into the station and held at the cash register. It would seem fair to conclude that the observation extended over several

minutes. The initial identification was within two or three hours of the robbery. If there is any suggestion of influence it is limited according to defendant's testimony to a question as to whether this was the man. It appears that Seabert spontaneously noted an apparent difference in the length of the robber's hair which was reconciled when the wig was worn. We note that such was not a violation of the Fifth Amendment privilege. (See *United States v. Wade.*) These facts of record support a conclusion that the identification at trial had an origin independent of the view at the jail, and we need not consider the question of harmless error. See *United States v. Wade.*

■■ Defendant contends that the court erred in denying probation and that the minimum sentence imposed is excessive. Initially, we note that the trial court observed defendant's demeanor during the trial and heard his testimony. In the hearings upon the petition for probation and for aggravation and mitigation, he continued to deny his participation in the robbery, affirmed that Geary's testimony was false and perjured and that all of the other eye-witness testimony was wrong. There is no evidence of any step toward rehabilitation through acknowledgment of guilt. (*People v. Darrah,* 33 Ill.2d 175, 210 N.E.2d 478.) The absence of a prior criminal record does not necessarily outweigh the factor of acknowledgment of guilt, either upon the issue of probation or of sentence.

It is argued that the trial court had reached a pre-determined conclusion that probation would be denied, citing *People v. McAndrew,* 96 Ill.App.2d 441, 239 N.E.2d 314. In that case the court appears to have considered many matters outside of the record and to have ignored the significance of the psychiatric report upon the defendant. It suffices to note that the trial court here did grant probation to a co-defendant where the record included affirmative factors supporting such disposition.

■■ The asserted issue of defendant's representation by counsel throughout the trial is without merit. The public defender who was appointed to represent defendant had resigned following the trial, but he continued to serve as counsel of record throughout the post-trial motions, filed the petition for probation and presented evidence both at the hearing and in aggravation and mitigation. The record shows that he acted with great diligence and vigor. We do not regard his status as counsel of record as depending holding the office of public defender. The issue arises upon the showing in the record that just prior to sentence, counsel stated that since he was no longer public defender, he was withdrawing as counsel. No order allowing such withdrawal appears of record. In the absence of anything to the contrary, we presume that counsel continued to be

present at the sentencing which immediately followed. (*People v. Pittman*, 28 Ill.2d 100, 190 N.E.2d 802.) It is a fair inference that counsel was withdrawing so far as further appeal was involved.

The judgment is affirmed.

Judgment affirmed.

SMITH, P. J., concurs.

Mr. JUSTICE CRAVEN, concurring in part and dissenting in part:

While I agree with my colleagues that this conviction should be affirmed, I do not agree with the conclusions reached with reference to sentencing.

The defendant and one Geary and a girl (a juvenile) were involved in this offense. The evidence as to the offense indicated that the defendant was driving Geary's car but the gun was owned and handled by Geary in the course of the robbery. Geary and the defendant were each charged with armed robbery. No charges were filed against the girl. She was released to family and juvenile authorities. Ultimately Geary pleaded guilty and his petition for probation was pending at the time of his testimony in the trial of Curl. Upon Curl's plea of not guilty, the jury found Curl guilty and his request for probation was denied. Curl was apparently incarcerated for some months, whereas Geary appears to have been released upon bond.

There are remarkable similarities in the background of these two defendants. Curl was 20, had been in military service, received an honorable but hardship discharge. He contributed to the support of a crippled younger sister and lived with the sister. His only involvement with the law was a disorderly conduct charge, and the record indicates that this was not a reduction from a more serious offense. The Geary record is here by stipulation. It shows him to be only one year older than Curl and that he has a speech defect. He lives alone and contributes to the support of a sister and her infant daughter. He, too, has a prior disorderly conduct conviction and another charge—that of illegal possession of liquor—pending but apparently not to be prosecuted. While the trial judge indicated a reluctance to place Geary on probation, he ultimately did so and then denied the request of the State's Attorney that probation be coupled with a period of incarceration at the Illinois State Farm as a condition of probation. Thus, Geary, upon a plea of guilty, was given probation for a term of three years.

Curl, whose conduct was perhaps less culpable than Geary's—and certainly no more so—received a penitentiary sentence of not less than

three nor more than ten years. The only discernible difference between these two defendants, from the record as to both, is that Geary pleaded guilty and Curl pleaded not guilty and demanded trial. The majority rely upon *People v. Darrah,* 33 Ill.2d 175, 210 N.E.2d 478, *cert.* denied, 383 U.S. 919, 86 S.Ct. 917, 15 L.Ed.2d 674, *reh.* denied, 383 U.S. 963, 86 S.Ct. 1229, 16 L.Ed.2d 306 (1966), as authority for the proposition that acknowledgment of guilt is evidence of a step toward rehabilitation, and thus apparent justification for what I consider disparity in sentencing. I do not understand *Darrah* to so hold. Mr. Justice Schaefer, in *Darrah,* discusses negotiated pleas and the undesirability of a rule that would prohibit any differentiation between a sentence imposed after a plea of guilty and one imposed after trial. Indeed, in the course of the opinion, it is stated that:

"* * * a great disparity between the sentence to be imposed upon a plea of guilty and that to be imposed after a trial, combined with other circumstances unrelated to guilt or innocence, may cause innocent persons to plead guilty. * * *" *People v. Darrah,* 33 Ill.2d 175, 180—181 (210 N.E.2d 478, 481), *cert.* denied, 383 U.S. 919, 86 S.Ct. 917, 15 L.Ed.2d 674, *reh.* denied, 383 U.S. 963, 86 S.Ct. 1229, 16 L.Ed.2d 306 (1966).

Some difference in sentencing, under the circumstances found here, may be permissible. The difference here found, as I view it, is not permissible. There is no basis either in the records of the individuals sentenced nor in the nature of the participation of such individuals in the crime that warrants such disparity. (See *People v. Steg* (3rd Dist. 1966), 69 Ill.App.2d 188, 215 N.E.2d 854.) The court in *Steg* does acknowledge that lesser sentences are approved where an individual aids in disposition of a case through cooperation with the prosecution.

I do not suggest that the denial of probation to Curl was error. I do suggest that this court is warranted in reducing the minimum sentence of three years to the statutory minimum of two years. Such would be an appropriate use of the power of the Appellate Court to reduce sentence, and indeed such action is specifically approved by the State's Attorney. He stated: "* * * the People would have no objection to reduction of the minimum portion of the sentence to two years, * * *."

The American Bar Association Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968), p. 1, makes this observation:

"The consequences of a sentence are of the highest order. If too short or of the wrong type, it can deprive the law of its effectiveness and result in the premature release of a dangerous criminal. If too

severe or improperly conceived, it can reinforce the criminal tendencies of the defendant and lead to a new offense by one who otherwise might not have offended so seriously again." See also *People v. Buell* (2nd Dist. 1970), 120 Ill.App.2d 367, 256 N.E.2d 845.

"Judicature", The Journal of The American Judicature Society, devotes an entire issue to the question of sentencing. An editorial prelude to the articles makes this observation:

"Law enforcement, judicial administration, and corrections are inseparable parts of a seamless whole. The sentence is the end product of the judicial part of the process, and it is remarkable that so much attention has been given, for example, to subtle niceties in regard to the admission of evidence, while sentencing decisions affecting years of a man's life, and largely determining whether or not he ever will be a productive member of society again, have all too often been left to hunch or chance." Judicature, Vol. 53, No. 2 (Aug.-Sept. 1969), p. 51.

It is ironical that one of the articles suggests that Appellate review is a means of ensuring rational sentencing and the need for such review is based upon an unquestioned showing of sentencing disparity. Appellate review, in Illinois, cannot eliminate disparity if, upon review, this court and other divisions of the Appellate Court condone sentencing such as is here indicated.

I do not understand the admonition in *People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673, and the many cases thereunder, that reviewing courts should use the authority to reduce sentences with such caution and circumspection as to approve sentences that are undebatably disparate. It is disturbing to me that this court refuses to correct what I consider to be a clearly disparate sentence. Such refusal is even more difficult to understand in view of the affirmative statement by the prosecution that there was no objection to such action. Appellate review in Illinois may become an illusion as suggested by Halperin, *Appellate Review of Sentence in Illinois—Reality or Illusion?*, 55 Ill. B.J. 300 (1966). See also Rubin, *The Law of Criminal Correction* 148 (1963).